## WOODRUFF et al. v. OSWEGO STARCH FACTORY.

(Supreme Court, Appellate Division, Fourth Department. March 11, 1902.)

1. LANDLORD AND TENANT—TAX ON RENTS—LIABILITY—COVENANTS—CONSTRUCTION.

A covenant in a lease, executed in perpetuity, bound the lessee to pay "all taxes, charges, and assessments, ordinary and extraordinary, which shall be taxed, charged, imposed, or assessed on the hereby demised premises, or any part thereof, or on the said parties of the first part [the lessors], their heirs and assigns, in respect thereof." *Held*, that the tax imposed by Laws 1896, c. 908, §§ 8, 21 (subd. 5), on rents reserved under leases in fee, should be paid by the lessor, and when collected from the tenant under section 75, he can deduct the amount from the rent.

2. SAME—PAYMENT OF TAX—SET-OFF AGAINST RENT.

Where the tenant paid such tax under the compulsory process provided by section 75, with the knowledge and acquiescence of the lessor, who made no demand that the tax be resisted as unconstitutional, nor tendered indemnity therefor, the right to set off the payments made could not be resisted on the ground that the statute was unconstitutional.

Submitted controversy between Caroline B. Woodruff and others and the Oswego Starch Factory. Judgment for defendant.

See 74 N. Y. Supp. 443.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Frederick E. Storke, for plaintiffs.
H. L. Howe, for defendant.

HISCOCK, J. This action involves the construction of a covenant with reference to the payment of taxes contained in certain leases executed in perpetuity of premises situated in Oswego. The plaintiffs have become owners and landlords, and the defendant the tenant, under said leases. Between June 2, 1847, and the year 1867, Charles Carrington and Myron Pardee, being the owners of certain lands and water power on the Oswego river, executed to various persons seven leases in fee, reserving in each case to the lessors a perpetual rent. Prior to 1898 the plaintiffs' testator, one Nelson Beardsley, had acquired an undivided half interest in said seven leases and the rents reserved thereunder, and the defendant had acquired under said leases the fee of the land therein described. May 13, 1846, and therefore a little more than a year before the first lease was drawn, there had been passed the act imposing a tax upon rents reserved in leases such as those under consideration. By chapter 908, Laws 1896, known as the "Tax Law," the provisions of this original act for this species of taxation were in the main re-enacted. Section 8 provided that:

"Rents reserved in any lease in fee * * * and chargeable upon real property within the state shall be taxable to the person entitled to receive the same as personal property in the tax district where said real property is situated."

Subdivision 5 of section 21 provided for setting down in the fifth column of the assessment roll the value of such taxable rents esti-

74 N.Y.S.—61

mated upon a certain prescribed basis. Section 75 provided that, if said taxes could not be collected out of the persons against whom they were assessed, the same might be collected of the tenant or lessee in possession of the premises on which the rent was reserved, and in that case such tenant or lessee should be entitled to have the amount paid or collected of him, with interest, deducted from the amount of rent reserved upon such premises then or thereafter to become due. The rents reserved upon the leases in question were never actually assessed until the year 1898. Since then they have been, and, the plaintiffs having failed to pay the taxes, they have been collected by appropriate proceedings from the defendant, which now seeks to deduct the amount so collected, amounting to several hundred dollars, from the rents reserved under its leases to the plaintiffs. Plaintiffs deny its right so to do, claiming that the obligation rests upon defendant to pay said taxes, and these opposing contentions of the respective parties as to the liability to pay said taxes lead to and involve a construction of the tax covenant, written in substantially similar language in each of said leases. This covenant binds the lessee to pay—

"All taxes, charges, and assessments, ordinary and extraordinary, which shall be taxed, charged, imposed, or assessed on the hereby demised premises, or any part thereof, or on the said parties of the first part [the lessors] their heirs and assigns, in respect thereof."

The learned counsel for the plaintiffs has approached the immediate interpretation of the clause with a most extended and careful review and analysis of early English statutes and decisions bearing upon the subject of taxation as related to and involved in leases after which the ones in question are largely patterned and formulated. The review thus made, however, while extremely interesting for the historical light which it throws upon the general subject of leases and taxes, fails to disclose any authority which to our minds is decisive of the precise question here presented. In the solution of that, and the construction of the covenant in dispute, we must mainly be governed by the reasonable and natural meaning of the words used in the clause itself, considered in the light of the entire contract of which the latter is a part. Some aid can be derived from general considerations which may be supposed to have affected the minds and intentions of the parties when the leases were made, and at least one authority has been cited from the reports of this state adjudicating the meaning of a somewhat analogous provision.

Passing, then, to a consideration of the language employed in the covenant, we think it very apparent that plaintiffs' contention of defendant's liability finds a broader support in the last than in the first clause. We easily conclude that taxes, etc., "taxed, charged, imposed, or assessed on the hereby demised premises" and privileges do not include a tax assessed upon the rents springing therefrom. The word "premises" is used throughout the leases as meaning and referring to the lands and rights which are the subject of the leases. When we join with it the other words used, with the resultant term, "hereby demised premises," we think it becomes clear beyond doubt that there is meant and indicated exclusively the land and property

which is leased to and put in the possession of the tenant, and that it would be a violent construction to hold the latter liable under this clause to pay a tax upon rents which the landlord received as the consideration and consequence of so demising such premises. It is to be observed that the law providing for this taxation expressly treats and defines it as a tax upon personal property.

Plaintiffs' counsel, in support of his theory that rents are so an incident or a part of the premises that a tax upon them may be regarded as one upon the latter within the terms used, has especially urged upon our attention the opinions delivered in the recent income tax cases in the supreme court of the United States, and in which it was held or said by various of the judges, in substance, that the term "lands" included the rents issuing therefrom. The issues in those cases naturally and equitably seem to have permitted of such a conclusion. The question arose as to the legality of a law which taxed the income, including the rents, of real estate. Concededly a constitutional prohibition existed which forbade direct exaction upon real estate after the manner pursued in the statute, and the question was presented whether congress might evade such prohibition against said tax upon lands by levying the same upon the income thereof. The opinion was expressed by various members of the court that it might not be allowed to avoid the prohibition which covered the subject, simply by proceeding against what was clearly an incident and a part thereof. The principles there evoked and declared, however, do not seem to us to apply to this case. Here is no attempt to escape a broad constitutional provision, which protects a certain class of property, by attacking some incident thereof. The question simply is of the apportionment of what may be assumed to be proper and legal burdens between two parties to a contract, as governed by the terms of that contract. The construction to be sought is one which will simply, legally, and properly determine the rights of the two parties to a contract.

We therefore are remitted to the final query whether this tax can be said to be one imposed on the "parties of the first part [lessors of the premises and privileges], their heirs and assigns, in respect thereof." Technically and grammatically the words "in respect thereof" relate and have reference to the preceding words, "demised premises and privileges," so that the words describe a tax imposed upon the lessors "in respect of" or in relation to the leased premises. If this wording covers this tax, it must be because such tax upon rents may be said to be one in respect of or in relation to the demised premises. While perhaps it might be said that a tax upon the rents reserved under a lease had some very general relation to the demised premises which produced them, we do not think that it would be a natural or reasonable construction to hold that the relation was such as to satisfy the requirements of this covenant. The tax here indicated is one which is directed specifically against the property which is demised, or against the lessors in respect of or on account of such property. We call to mind at once the class and character of such taxes which would be so charged against said premises. In form, when the owners were nonresidents of the county where the premises

were situated, as in this case, the ordinary taxes would be assessed in the name of the defendant as occupant. But the legislature might at any time provide that the plaintiffs should be assessed for them, and then immediately a case would be presented for the application with its natural meaning of this last provision. Plaintiffs would be as-sessed in respect of the demised premises, and it would become the duty of the defendant to protect them and the premises against such assessment by paying the tax thereon. But when we pass beyond this class of assessments, and assume one made against the lessor upon his income or rents received under a lease, and otherwise in no manner based upon or measured by the lands leased, their value, character, or condition, it seems to us that it would be a strained construction to say that such tax was on account of, related to, or "in respect of" the demised premises, within the meaning of this covenant:

Sufficient reason is found in the general scope of the contract be-tween the parties for imposing upon the tenant the obligation to pay all taxes which naturally and legitimately could be said to be assessed upon the leased lands and privileges, in whosoever's name the assess-ment might be. Under the leases it became practically the owner of the premises. They were its to occupy, improve, and enjoy, with all of the profits to be derived therefrom. The burden would naturally follow of discharging all taxes which might be assessed against them, and which theoretically, in large part, would represent benefits and improvements making the lands more valuable. ·There would, how-ever, be no such appropriateness in making the tenant pay taxes upon the rents. Those were the property of the landlord, which it was his right to utilize and enjoy as best he could; and a similar process of logic would naturally call upon him, rather than the tenant, to dis-charge any burden of taxation which the government might see fit to impose upon them. If it should be urged that this argument of what would be the reasonable division of burdens between the parties is subject to the defect that the imposition of some unexpected tax upon the rents might so diminish the landlord's net revenue from the prem-ises as to make the contract inequitable toward him, it may readily be answered that the same unforeseen contingency might deprive the tenant of all his profits, and that in this case no such consideration is presented, because this species of taxation was framed before the leases were made.

Coming to some of the general arguments outside of the words themselves of the covenant in question, it is forcibly and ably argued by plaintiffs' counsel that this taxation of rents under leases such as these was the result of a strenuous and widespread public agitation which had culminated in the passage of the original act for this manner of assessments only a year or two before the first of these leases was made; that therefore it must be assumed that the land-lords, in making them, had this taxation in mind, and intended to guard against it; and that this intention of the parties should be taken into account in construing the covenant. We are unable, however, in this argument to find much support for plaintiffs' contention. It is fair to assume that these contracts were the product and evolution of much experience and care upon the part of the landlord class, and

that if there is any ambiguity upon this particular subject it is to be charged against the lessors, rather than otherwise.   If, then, counsel is correct that they had in mind the imposition of this tax at the time the leases were made, and it was the intention and the agreement of the parties that the same should be paid by the tenant, it is difficult for us to understand why the latter obligation was, to say the least, left in so much doubt, when the use of three or four words would have placed it beyond any uncertainty whatever.   It would perhaps be more reasonable to infer that the lessors, taking into account the possibility of this taxation, fixed the consideration for and the rents reserved under the leases at such a figure as would indemnify them against the same when the hour of payment came.   But one case has been called to our attention passing upon a clause in a lease somewhat similar at least to the one in question.   Van Rensselaer v. Dennison, 8 Barb. 23.   Plaintiffs' counsel, in a careful analysis of this case, seeks to so distinguish it that it will not be an authority for defendant in its contention herein.   While the clause there construed was not absolutely identical with the one here, it still did contain, among other phrases, substantially the language under review by us; and we think the reasoning employed by the court in that case does support very strongly the theory of defendant, adopted by us, that the tax upon rents was for the landlord and lessor to pay.

Upon the assumption that this court might hold as above indicated, it was next urged by plaintiffs' counsel that the law under which the assessments in question were made was unconstitutional, and the latter void; that therefore the tenant had no right to pay the taxes upon such assessments, and charge the same up against the rents reserved under the leases.   We do not find it necessary to consider the first proposition, because, even if we should adopt plaintiffs' views in relation thereto, we should still hold that under the facts of this case defendant would be entitled to the offset claimed.   In substantially the same form as now, the provisions for this manner of taxation have been embodied in the statutes of this state for over half a century. During that time we must assume that they have been enforced in a multitude of instances, and that they have imposed a burden which was exceedingly irksome to and unpopular with those who were its objects.   Notwithstanding this, no one, so far as we are aware or are advised by plaintiffs' counsel as the result of his great research, has secured from any court a decision that the law was unconstitutional. We refer to this history, not, of course, as deciding the question of law presented, but as bearing upon the conduct and good faith of the defendant in paying the taxes imposed under it.   It did not hurry forward to pay them.   Its payment was not voluntary, but enforced by levy and sale of its property.   Plaintiffs are not only presumed to have had knowledge of the law providing for these assessments, but as a matter of fact did have such knowledge, and were aware that after a long period of nonenforcement of the law the same was to be invoked against these rents.   The prepared statement of facts recites that plaintiffs, "prior to the completion of the assessment roll in 1898, notified defendant of the proposed assessment, and of plaintiffs' claim that defendant was bound to pay the taxes levied thereon."   Such

notice assumed the validity of the assessment, rather than otherwise. The assessment in form was against the plaintiffs. If we are right in the conclusions which we have reached, the liability rested upon them, rather than upon defendant, to make payment thereof. Under all of these circumstances, we think that, if they desired to resist this species of taxation upon the ground that it was unconstitutional and illegal, they themselves either should have done so, or should have fairly advised defendant of their claim and position, before the payments were made; that under the circumstances the obligation did not rest upon defendant upon its own motion, without demand or offer of indemnity by plaintiffs, to resist the payment of the taxes further than it did. We think that it is entitled, in accordance with the provisions of the statute, to set off the latter, which have been collected from it, against the rents reserved under the leases.

In accordance with these conclusions, plaintiffs are entitled to the sum of $552 heretofore tendered to them by defendant, and defendant is entitled to recover of plaintiffs the balance in amount of taxes upon rents collected from it during the year 1899 over and above rents accrued and unpaid or accruing during said year, and judgment should be had accordingly.

Judgment ordered for defendant for $101.19, with interest from November 1, 1900, with costs. All concur.