John M. Brainard et al., Respondents, *v.* The New York Central Railroad Company et al., Appellants.

Contract — lease — provision that lessee will pay all taxes assessed against property or lessor " by reason of its ownership thereof " does not require payment of income tax — practical construction not a basis for changing terms of unambiguous contract — rights under contract not affected by former payments of income taxes through inadvertence or error of construction — unanimous affirmance of facts found tending to alter effect of unambiguous contract no part of decision.

1. In actions based on leases and working agreements, where the lessee agrees to pay all taxes levied and assessed on or in respect to the property, a tax on the rents or income of real property is not considered a tax on the property itself, and where by such an agreement the lessee agreed to pay all taxes assessed upon the leased property or on the lessor " by reason of its ownership thereof " the words " by reason of its ownership " do not differ so essentially from the words " on " or " for " or " in respect of " leased premises as to call for another interpretation. Unless the lease expressly provides for payment of taxes on the income from rentals received under the lease, the imposition of such a burden on the lessee is not justified. (*Ill. Cent. R. Co.* v. *Ind. Union Ry. Co.*, 6 Fed. Rep. [2d S.] 830, 837, followed.)

2. Nor is the result affected by the fact that, in this action by stockholders to recover on behalf of their company, under such a provision in a lease made by it, from a successor lessee, an installment of income taxes assessed against and paid by their company, the triers of fact have conclusively fixed another sense in which the words were used in the contract as based on the intention of the parties and the practical construction given by them to the language of the lease. The construction of a plain contract is for the court and the intention of the parties is found in the language used to express such intention. Their conduct may fix a meaning to words of doubtful import. It may not change the terms of a contract.

3. Former payments of such taxes by the lessee, either through inadvertence or by reason of failure properly to construe the language of the contract, do not alter the position of the parties. When the instrument is clear in the eye of the law the error of the parties cannot

control its effect. The court stands on the written agreement and facts found and unanimously affirmed which tend to alter its effect are no part of the decision.

Brainard v. N. Y. C. R. R. Co., 214 App. Div. 705, reversed.

(Argued January 18, 1926; decided February 24, 1926.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 23, 1925, unanimously affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

*Nathan L. Miller, Frederick L. Wheeler, Crosby J. Beakes, Alexander S. Lyman* and *Charles C. Paulding* for appellants. The tax clause is clear and definite in its meaning and is so limited as to negative the intent that the operating company should pay the personal income taxes of the owning company. (*Creps* v. *Baird,* 3 Ohio St. 280; *Cincinnati College* v. *Yeatman,* 30 Ohio St. 276; *State* v. *Wisconsin Tax Commission,* 166 Wis. 287; *Park Building Co.* v. *Yost Fur Co.,* 208 Mich. 349; *Matter of Hazard,* 228 N. Y. 29; *Pennsylvania Cement Co.* v. *Bradley Cont. Co.,* 274 Fed. Rep. 1003; *Young* v. *Illinois Athletic Club,* 310 Ill. 75.) The tax clause being clear and definite, there is no ground for applying the rule of practical construction. (*Young* v. *Athletic Club,* 310 Ill. 75; *Elliott* v. *Winn,* [Mo.] 264 S. W. Rep. 391; *Gans* v. *Ætna Life Ins. Co.,* 214 N. Y. 330; *Railroad Co.* v. *Trimble,* 10 Wall. 377; *Sharp* v. *Behr,* 117 Fed. Rep. 864; *Elefante* v. *Pizitz,* 182 App. Div. 822; 230 N. Y. 567.) The proper construction of the contract presents only a question of law. (*Braxton* v. *Mendelson,* 233 N. Y. 122; *Hartigan* v. *Casualty Company of America,* 227 N. Y. 175; *Matter of Thompson,* 217 N. Y. 111; *Smyth* v. *Brooklyn Union El. R. R. Co.,* 193 N. Y. 335; *People* v. *Most,* 171 N. Y. 423; *Sattler* v. *Hallock,* 160 N. Y. 291; *Gould* v. *Equitable Life Assur. Society,* 231 N. Y. 208; *Ticonderoga R. R. Co.* v. *Delaware & Hudson R. R. Co.,* 204 N. Y. 588.)

*Charles I. Taylor* and *Thomas H. Beardsley* for respondents.     Taxes on revenues from property, including gross earnings, taxes and income and excess profits taxes are a burden on the property whether direct or excise taxes and are, therefore, a burden on ownership. (*Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429; *Suter* v. *Jordan Marsh Co.*, 225 Mass. 34.)     The changes made by the 1884 agreement evidence an intention to require the operating company to pay all taxes. (*Consolidated Gas Co.* v. *Newton*, 267 Fed. Rep. 231; 258 U. S. 165; *Galveston Electric Co.* v. *Galveston*, 258 U. S. 388.)     The acts of the Lake Shore and the Central under the similarly worded tax covenants of the subsidiary operating agreements of October 1, 1889, in paying taxes on gross earnings establish the intent of the parties that the words " by reason of ownership " were to include taxes in respect of the revenues. (*Kimball* v. *Cutting*, 229 Mass. 541; *Suter* v. *Marsh*, 225 Mass. 34.)     The tax covenant of the 1884 agreement is ambiguous. (*Utica City National Bank* v. *Gunn*, 222 N. Y. 204; *Salant* v. *Fox*, 271 Fed. Rep. 447; *Park Building Co.* v. *Yost*, 208 Mich. 349; *Fish* v. *Hubbard's Administrators*, 21 Wend. 651; *Petrie* v. *Trustees of Hamilton College*, 158 N. Y. 458; *Tidswell* v. *Whitworth*, L. R. 2 C. P. 326; 15 L. T. Rep. [N. S.] 574; *Thompson* v. *Lapworth*, L. R. 3 C. P. 149; 17 L. T. Rep. [N. S.] 507.)     The defendant New York Central and its predecessor, the Lake Shore, in paying these income and excess profits taxes assessed against the Mahoning Company, uniformly and continuously for many years placed a practical construction upon the terms of the agreement which is determinative and conclusive as to its meaning and intent. (*Woolsey* v. *Funke*, 121 N. Y. 87; *Carthage T. P. Mills* v. *Village of Carthage*, 200 N. Y. 1; *City of New York* v. *New York City Ry. Co.*, 193 N. Y. 543; *Story* v. *Craig*, 231 N. Y. 33; *Geneva Mineral Spring Co.* v. *Coursey*, 45 App. Div. 268; *Dworsky* v. *Herstein*, 207 App. Div. 333; *Clausen* v.

*Title Guaranty & Surety Co.*, 168 App. Div. 569; *New York Trust Co.* v. *Portland Railway Co.*, 197 App. Div. 422; *Topliff* v. *Topliff*, 122 U. S. 137; *Huntting Elevator Co.* v. *Bosworth*, 179 U. S. 415.) The findings of the trial court as to the meaning and intent of the tax covenant, being based on the relation and acts of the parties, the surrounding circumstances, and the language of the agreement, determined conflicting inferences sought to be drawn from the established evidence and were, therefore, findings of fact. These findings of fact were unanimously affirmed by the Appellate Division and are binding and conclusive. (*Matter of Totten*, 179 N. Y. 112; *Utica City Nat. Bank* v. *Gunn*, 222 N. Y. 208; *Kenyon* v. *K. T. M. M. A. Assn.*, 122 N. Y. 247; *White* v. *Hoyt*, 73 N. Y. 505; *Trustees of East Hampton* v. *Vail*, 151 N. Y. 463; *Golden* v. *Shaw & Co.*, 204 App. Div. 404; *Lamb* v. *Norcross Bros. Co.*, 208 N. Y. 427; *U. S. Rubber Co.* v. *Silverstein*, 229 N. Y. 168; *Bradburn* v. *Solvay Process Co.*, 18 App. Div. 542; *Commercial Bank* v. *Sherwood*, 162 N. Y. 316.)

POUND, J. Minority stockholders of the Mahoning Coal Railroad Company bring this derivative action to recover on behalf of their company from the New York Central Railroad Company as successor of the Lake Shore Company an installment of Federal income and excess profits taxes assessed against and paid by Mahoning Company for the year 1920, amounting to $480,425.20.

The Mahoning Company is a railroad corporation of Ohio with an outstanding capital stock of $2,161,367, consisting of $1,500,000 par value of common, and $661,367 par value of preferred, of which capital stock the Central Company is the owner of $894,650 par value of the common, and $419,150 par value of the preferred.

On December 4, 1871, the Mahoning Company being about to construct its road, entered into a traffic agreement with the Lake Shore Company providing for track-

age rights by the Mahoning Company over the Ashtabula branch of the Lake Shore Company, for fair treatment by each road in handling the traffic to or from the road of the other, for the divisions between the parties as to the joint traffic and for the assistance by the Lake Shore Company in the marketing of the bonds of the Mahoning Company by annual application of forty per cent of the revenues of the Lake Shore Company from the joint traffic to the purchase of such bonds if obtainable at par or less.

On May 1, 1873, the Mahoning Company having completed its road and being without equipment to operate it, entered into a supplemental agreement with the Lake Shore Company under which the Lake Shore Company was to manage, maintain and operate the road of the Mahoning Company for twenty-five years (subject to the right of the Mahoning Company to terminate after five years) and share the gross earnings with the Mahoning Company on the basis of forty per cent to the Mahoning Company and sixty per cent to the Lake Shore Company.

On July 1, 1884, a further agreement (the one here involved) was entered into between the Mahoning Company and the Lake Shore Company under which the prior agreements were canceled and the Lake Shore Company was to continue to work, maintain and operate the road and property of the Mahoning Company, of which it was in possession under the prior agreement in perpetuity and share the gross earnings with the Mahoning Company on the basis of forty per cent to the Mahoning Company and sixty per cent to the Lake Shore Company. The Central took over the agreement as a part of the consolidation agreement with the Lake Shore in 1914.

The question is as to the construction of the covenant as to taxes contained in this agreement of July 1, 1884, which reads as follows: " That it [Lake Shore Company] will in due season pay all taxes and assessments which may be levied or become chargeable on the said road or

9

property, or upon the said Mahoning Company, by reason of its ownership thereof." Prior to the tax in suit the New York Central had been paying these taxes.

As under the agreement of 1884 the Central Company bears the cost of maintenance and operation and of taxes on the road and property, the forty per cent share of the gross income received by the Mahoning Company is free of all such charges, and the plaintiffs now contend that in addition to the charges so paid, the Central Company should also so pay the personal income taxes of the Mahoning Company both on its shares of the gross income so received and on its other income as well.

The Appellate Division, first department, affirmed the judgment of the Special Term without opinion. The court at Special Term was of the opinion that it was the intent of the parties to the agreement of 1884 that the " lessee " should pay every tax of every name and description and that as the " lessor " derives its entire income from the forty per cent of the gross earnings of its road and from certain interest returns upon such earnings and the investment thereof, all its taxes result directly or indirectly by reason of its ownership of its road, and whether or not as an original question the Federal income tax would be technically chargeable upon the " lessor " company by reason of its ownership of its road and property that every doubt as to the intent and meaning of the parties had been entirely dispelled and the proper interpretation of the " lease " conclusively established by the practical, uniform and continuous construction placed upon the " lease " by the parties themselves.

The defendant Central Company contends that the court at Special Term was in error in its conclusions for the reason that:

(1) The tax clause in question does not admit of the construction placed upon it by the lower courts; but on the contrary, it is clear and definite in its meaning and is

so limited as to negative the intent that the operating company should pay the personal income taxes of the owning company.

(2) The tax clause being clear and definite, there is no ground for applying the rule of practical construction.

In actions based on leases and working agreements like the one in question (which for convenience may be called a lease), where the lessee agrees to pay all taxes levied and assessed on or in respect to the property, the distinction between taxes on the income of property and taxes on the property itself has been repeatedly pointed out. With monotonous frequency the courts have held in this connection that a tax on the rents or income of real property is not considered a tax on the property itself. When the lessee is to pay all taxes, ordinary and extraordinary which shall be imposed on the demised premises or " in respect thereof," the tax on rents is a tax not in relation to the property demised but in relation to the income thereof. (*Woodruff* v. *Oswego Starch Factory*, 177 N. Y. 23.)

The literal words used in the contract before us have not been the subject of judicial construction and it is urged that they have some weighty and special significance indicative of the foresight of the parties in 1884 when income taxes were not in their direct contemplation. What is meant by taxes assessed upon the Mahoning Company " by reason of its ownership " of the leased property? Do these words differ so essentially from the words " on " or " for " or " in respect of " leased premises as to call for another interpretation? The words chosen by the parties should not be unnaturally forced beyond their ordinary meaning. (*Codman* v. *American Piano Co.*, 229 Mass. 285.) The operating company pays the taxes incidental to operation. It turns over forty per cent of the gross earnings to the Mahoning Company. Doubtless the Mahoning Company would have no income tax to pay if it did not own the property but ownership

taxes and income taxes have been so clearly separated
that the rule has been recently formulated in these words:
" Unless the lease *expressly provides for the payment of taxes
on the income* from rentals received under the lease, the
imposition of such a burden on the lessee is not justified."
(*Ills. Cent. R. Co.* v. *Ind. Union Ry. Co.*, and cases cited,
6 Fed. Rep. [2d S.] 830, 837.)   The rule has the merit of
reasonableness and certainty and we do not hesitate to
adopt it.   If more is desired, the language may easily
be made sufficiently comprehensive.   In *Suter* v. *Jordan
Marsh Co.* (225 Mass. 34) the lessee agreed to pay all
taxes levied " upon or in respect of " the rent.   This
covered the income tax.   The words " taxes by reason
of ownership " have a special significance and do not
suggest income taxes.   In *Thomas* v. *Cincinnati, etc.,
Ry. Co.* (93 Fed. Rep. 587) the question was as to a
franchise tax.   It was held that a franchise tax was a
tax imposed " by reason of the ownership " of the leased
railroad.   The lease specifically covered taxes on income.

The Canadian case of *New Brunswick & Canada R. R.
Co.* v. *N. B. Ry. Co.* (4 D. L. R. [1924] 962) suggests the
force to be given to the words " by reason of the owner-
ship." ANGLIN, J., speaking of taxes assessed upon the
owner railroad said that the burden included " all charges
in the nature of taxation levied upon the demised property
itself, and possibly, in addition, *such as may be assessed
upon the lessor qua owner of the property* " and did not
include income taxes.   What was there left to inference
is here made plain.   It should not escape notice that in
Ohio taxes due upon land are a personal debt of him in
whose name the lands stand listed, as well as a lien upon
the lands.   In the words of HISCOCK, J., in the Appellate
Division in the *Woodruff Case* (*supra*) (70 App. Div. 481,
at p. 485): " The tax here indicated is one which is directed
specifically against the property which is demised *or
against the lessors* in respect of, or on account of, such
property."

We are construing an agreement; not determining the constitutionality of a taxing statute.   In *Pollock* v. *Farmers L. & T. Co.* (157 U. S. 429) it was held that a tax on rents or income received from real estate was a tax on real estate.   Obviously this was no ruling on the distinct question whether a tax on rent was a tax assessed on land or by reason of the ownership thereof.   The distinction is pointed out in the *Woodruff Case* (*supra*) (177 N. Y. at p. 29) where the court said: "A tax upon rents may, doubtless, be regarded, in legal theory, as a tax upon the land; but, while as a general proposition that may be true, it has no influence upon the question here," *i. e.*, the question of the liability of the lessee to pay the taxes on the rents.   It follows that the language of the agreement is not sufficiently broad to cover taxes upon the payments to be made thereunder; that it is broad enough to cover the personal liability of the Mahoning Company for taxes on the tangible property; and that income taxes are not, in the legal significance of the words used, imposed upon the Mahoning Company " by reason of ownership " of the property.

But it is urged that the triers of fact have conclusively fixed another sense in which the words were used in the contract before us as based on the intention of the parties and the practical construction given by them to the language of the lease.   The construction of a plain contract is for the court.   The intention of the parties is found in the language used to express such intention.   (*Hartigan* v. *Casualty Co.*, 227 N. Y. 175.)   If the court finds as matter of law that the contract is unambiguous, evidence of the intention and acts of the parties plays no part in the decision of the case.   Plain and unambiguous words, undisputed facts, leave no question of construction except for the court.   The conduct of the parties may fix a meaning to words of doubtful import.   It may not change the terms of a contract.

The payments made by the Central were made either

through inadvertence or by reason of failure properly to construe the language of the contract. The Mahoning Company has not been led to act to its disadvantage in any regard. The position of the parties has not been altered. When the instrument is clear in the eye of the law the error of the parties cannot control its effect. The mere fact that the landlord chooses to relieve a tenant of a duty tends in no way to create a duty not imposed by the contract. (*Elefante* v. *Pizitz*, 182 App. Div. 819, 822; affd., 230 N. Y. 567.) The court stands on the written agreement. Facts found and unanimously affirmed which tend to alter its effect are no part of the decision.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur; CARDOZO, J., absent.

Judgments reversed, etc.