Rice *v.* Washington County Building & Loan Ass'n
*et al.*[*]

(Division A. Jan. 10, 1927.)

[110 So. 851. No. 26094.]

1. MARRIAGE. *Married man cannot be held to be husband of woman living with him only until discovering he was not divorced.*
   One failing to secure divorce from wife, with whom he had lived for about 14 years, cannot be held to be husband of woman with whom he lived but for a short time, until she discovered that he was not divorced from his first wife.

2. MARRIAGE. *Evidence held to establish legal marriage.*
   Evidence *held* to establish legal marriage so as to authorize inheritance as surviving husband.

3. MARRIAGE. *Failure to hear from wife for more than seven years before contracting second marriage raises presumption second marriage was valid.*
   Fact that husband had not heard from previous wife for more than seven years before contracting second marriage raises presumption that second marriage was valid and that his first wife was dead.

(1)

4. ESTOPPEL. *Surviving husband held not estopped from asserting title as sole heir of deceased wife, because not interposing in litigation between other parties.* ·

Surviving husband *held* not estopped to assert title as sole heir of deceased wife, because of his failure to interpose in litigation between other parties involving ownership of property.

5 ESTOPPEL. *Surviving husband's statements to attorney held not to constitute estoppel or renunciation of title, as heir of deceased wife.*

Statements of surviving husband to attorney, after being advised that he had no interest in land, that he was going to leave it with him and that he would not have anything to do with it, *held* not to constitute estoppel or renunciation of title as sole heir of deceased wife.

6. JUDGMENT. *Record of proceedings to which surviving husband was not party held incompetent, in suit to establish ownership as heir of deceased wife.*

In suit by surviving husband to establish ownership of land as sole heir of deceased wife, record of litigation involving ownership of land in which complainant had no interest and was not party to *held* incompetent.

---

*Corpus Juris-Cyc. References: Estoppel, 21 C. J., p. 1150, n. 78; p. · 1153, n. 98; p. 1154, n. 2; p. 1221, n. 13; Judgments, 34 C. J., p. 1054, n. 43; Marriage, 38 C. J., p. 1294, n. 15; p. 1299, n. 87; p. 1330, n. 90; p. 1331, n. 97.

APPEAL from chancery court of Washington county. HON. E. N. THOMAS, Chancellor.

Suit by Ambrose Rice against the Washington County Building & Loan Association and others, wherein the defendant named filed a cross-bill. Decree for defendants, and complainant appeals. Reversed and remanded.

*W. C. Neill,* for appellant.

I. There was legal performance of a marriage ceremony between Ambrose Rice and Katherine Thomas.

There were no legal impediments to prevent Ambrose Rice from marrying Katherine Thomas because the marriage of Ambrose Rice to Anna Wynne was not such im-

pediment, since she left him in March, 1902, and he has not heard of her since; and more than seven years have elapsed since he last heard of her in 1902, before he married Katherine Thomas in April, 1909.; wherefore there was a legal presumption that Anna Wynne was dead or divorced, before Ambrose Rice married Katherine Thomas; and the latter marriage was, therefore, valid as far as Ambrose Rice was concerned. 31 Miss. 547; 38 Miss. 313; 30 So. 660; 52 So. 360; 103 So. 218.

There were no legal impediments to prevent Katherine Thomas from marrying Ambrose Rice because: (1) There is no documentary proof that Katherine Thomas was ever the contracting party in any marriage ceremony except the one with Ambrose Rice; (2) there is no proof of any attempted marriage by Katherine Thomas, otherwise than her marriage to Rice, except her alleged attempted marriage to Davis Harris; and there is documentary proof and uncontradicted testimony that a marriage ceremony was performed between Davis Harris and a woman named Clara Peyton in 1887 and that at the time of Davis Harris' attempted marriage to Katherine Thomas said Clara Peyton Harris was alive and undivorced by him. The validity of Clara Peyton's marriage to Davis Harris cannot be questioned or contested here. 31 Miss. 547, 30 So. 660; 52 So. 360, 103 So. 218.

The foregoing premises lead to the following inescapable conclusions of law: (1) That Davis Harris was never legally married to Katherine Thomas; (2) that Ambrose Rice was legally married to Katherine Thomas and at her death became her heir, it being undisputed that he was not divorced from her at that time.

II.   The record does not disclose any basis for the decree of estoppel against Ambrose Rice.

(1)   The record shows that for a long time prior to her death, Katherine Thomas (Rice) was known in the community in which she lived as Katherine Rice. This fact alone should have made it incumbent upon prospect-

ive purchasers from the grantee of a suppositious heir to Katherine Rice to have investigated the claim of a husband by the name of Rice to the alleged inherited property.

(2)   There is nothing in the record to show that the alleged non-action of Ambrose Rice was relied on by any of the parties to any of the conveyances hostile to his interests, as inducing them to execute or receive such conveyances. Without proof of such reliance no estoppel could be set up against Ambrose Rice. *Staton* v. *Bryant,* 55 Miss. 261, 41 So. 501.

(3)   The record of chancery cause No. 7012, erroneously admitted as evidence for defendants in this case, shows that Ambrose Rice was not a party to said cause, and said record further shows that the title to the property in question was not in litigation therein; and, furthermore, there is nothing in this record to show that Ambrose Rice ever knew of the pendency of said cause No. 7012. Said cause was simply *res inter alios acta* so far as Ambrose Rice was concerned. 25 So. 156.

*Humphreys & Anderson,* for appellees.

The record discloses a veritable farce-comedy of negro marriages, divorces, re-marriages, and marriages without divorce. The chancellor had before him a half dozen negro witnesses and the deposition of another. There was the sharpest possible conflict in the testimony.

The record shows that the appellant, Rice, stood by when under a duty to speak, during the progress of this litigation and made no effort to assert any claim to the property, and that he also stood by in silence when the Building & Loan Association in good faith advanced its money upon the security of the property. The record also discloses that before the commencement of this suit, the complainant entered into an agreement with one, Pountain, whereby he conveyed one-half of his pretended claim to the property to Pountain in consideration of

Pountain's promise to institute suit for the property against Anderson and Finlay and the Washington County Building & Loan Association, appellees here.

Of intricate points of law, none appear in this case and there is little for learned counsel to argue about.

McGOWEN, J., delivered the opinion of the court.

Appellant, Ambrose Rice, filed his bill in the chancery court of Washington county against said association and Eva B. Anderson and Mary P. Finlay, alleging that he was the owner of a certain lot in the city of Greenville, that defendants were claiming title thereto, and that their claim constituted a cloud upon his title. Complainant asserted that his title rested upon the fact that he was sole heir at law of his deceased wife Katherine Thomas Rice; that the Building & Loan Association claimed title by virtue of a conveyance from Augustine Blackburn, who claimed through Davis Harris who, likewise, claimed the land by inheritance as the surviving husband of Katherine Thomas Rice. The bill further alleged that Harris and Katherine were never husband and wife, and that Harris never had any title, nor did any of those who claimed by virtue of his deed.

A copy of the mortgage executed by Augustine Blackburn to the loan association on September 4, 1923, was made an exhibit to the bill, also a copy of the deed from Augustine Blackburn to Anderson and Finlay, executed on the 18th day of February, 1924, was also made an exhibit thereto, as was a deed dated November 17, 1920, from Davis Harris to Augustine Blackburn.

The Building & Loan Association answered, denying that complainant was the owner of the land in controversy, denying that Katherine Thomas was ever legally married to complainant; and all the defendants admitted that the claim of title by and through Augustine Blackburn was by virtue of deed to her from Davis Harris, and asserting that Davis Harris was legally married to

Katherine Thomas and was her husband at the time of her death. It also asserted that complainant had unlawfully collected rents and that they were entitled to recover the rents from complainant. They also alleged, in a suit between Augustine Blackburn and A. H. Turnage, that it was settled the title was in Augustine Blackburn, and made the record in that cause, to which Rice was not a party, an exhibit to their answer. Defendants further allege that they paid out two hundred forty dollars and seventy-five cents for taxes and in the preservation of the premises and to free the title thereto from liens; and that complainant stood by and permitted this litigation to proceed without interfering and was estopped on account of his silence, and they further claimed they were entitled to an accounting for city taxes, etc., amounting to one hundred seventy one dollars and eighty-two cents, with interest. They prayed for allowance for the taxes, etc., and for an injunction against Ambrose Rice to prevent his making any further claim to the property. Rice answered the cross-bill and denied the material allegations thereof.

The proof essential to be set out for the determination of this case is about as follows:

Katherine Thomas and Ambrose Rice, by competent proof, were shown to have been lawfully married on April 20, 1908. Ambrose Rice, on cross-examination, admitted that early in the month of March, 1902, in another state, he was married to a woman by the name of Anna Wynne; that they lived together about two weeks, when a former husband of Anna came with an officer and forcibly took her away from Rice, and that he never communicated with, lived with, or heard of her after that time; that from the time of his marriage with Katherine Thomas, until he was called upon to register as a soldier during the World War, they sustained the relation of husband and wife, but he never lived with her from 1917 until January 15, 1920, when she died; that at the time of

her death, and prior thereto since 1917, he was in the United States Navy at Norfolk, Va.

Davis Harris claimed to be the husband of Katherine Thomas. He undertook to marry Katherine Thomas on April 25, 1902, and the record of the issuance of the license was offered, over the objection of complainant, to that effect, although the license did not show that the rites of matrimony had ever been solemnized, and the form for the return of the clergyman or other officer was left blank. They lived together about a year, when Katherine discovered that he had a living wife from whom he was not divorced and made him get out of her house.

The further undisputed proof is that Davis Harris was married to one Clara Lee on July 14, 1887, and they lived together about fourteen years in Arkansas, and then moved together in Washington county, Miss., and lived some time together in said county; that he sought a lawyer to get a divorce who, according to his statement, misled him, and he admitted that he was never divorced from Clara Lee; and that Clara Lee had never moved her residence from Washington county since they moved there.

Clara Lee, the former wife of Davis Harris, said that immediately before she married Harris, she was legally married and had a husband with whom she had lived five years when he was killed. His name was Peyton. The record does not show how long after Peyton was killed before she married Harris. She said further that before she married Peyton, she married one Henry Brown who had been sent to the penitentiary and had been killed while there, and that his clothes, which he wore away from home, had been returned to her by a white man.

Davis Harris contradicts her as to statements made to him that Henry Brown, husband No. 1, according to this record, had sent for her prior to her marriage to Peyton and desired that she and the children of that marriage come to St. Louis and live there with him.

This is unimportant as it only goes to the credibility of Clara Lee.

On the question of estoppel, there is introduced here a record in which Augustine Blackburn filed a bill against A. H. Turnage, her lawyer, in which she alleged that she was the owner of this same property, and that her lawyer was about to foreclose a mortgage claimed to have been executed by her in his favor, and to which litigation, complainant, Rice, was not a party. The mortgage claimed by A. H. Turnage was for about seven hundred fifty dollars, and the court found, after hearing proof in case of *Blackburn* v. *Turnage,* the following, as shown by the final decree:

"This cause coming on this day to be heard upon the bill of complaint herein, the answer of defendant thereto, and oral proof, and having been argued by counsel for the respective parties, and it appearing to the court that the signature to the trust deed from complainant to defendant was obtained by duress and undue influence on the part of the defendant Turnage, and in furtherance of a scheme to obtain title to the property hereinafter described, and it further appearing to the court that the sum of two hundred dollars is ample compensation to defendant for moneys expended and service rendered in behalf of said complainant: It is ordered, adjudged, and decreed that the injunction prayed for in the bill of complaint herein be made perpetual, and the defendants A. H. Turnage and W. S. Watson be and they are hereby restrained from proceeding further with the foreclosure of said trust deed, or the collection of the note secured thereby, and that the trust deed from complainant Augustine Blackburn to defendant A. H. Turnage, and the note secured thereby, be and they are hereby reduced to two hundred twenty-five dollars and twenty-five cents. It is further ordered, adjudged, and decreed that the said defendant A. H. Turnage doth have and recover from the complainant Augustine Blackburn the sum of two hundred twenty-five dollars and twenty-five cents

aforesaid, in full compensation for services rendered and moneys expended in behalf of said complainant, two hundred dollars of which is attorney's fees and twenty-five dollars insurance premium, for which amount the said A. H. Turnage has and is hereby given a lien against the land herein described; and the said complainant is allowed sixty days within which to pay said amount, and if the same be not paid within said time, then Howard Dyer shall be and he is hereby appointed commissioner to sell said land in the manner prescribed by law. It is further ordered that the defendant pay all costs herein. [Property here described.] Ordered, adjudged, and decreed this 27th day of October, 1922.

"E. N. Thomas, Chancellor."

In the instant case, A. H. Turnage was offered as a witness on the question of estoppel, and admitted that he talked with these people, and concluded, representing Augustine Blackburn, that Harris was the lawful husband, and acting on that, had Harris execute a deed to his client, Augustine Blackburn, and that after getting all this information he learned that Ambrose Rice was in Greenville, and the following testimony was delivered by Turnage, together with the fact that there was a lawsuit between Turnage and Augustine Blackburn as to the fee:

"I had the information through Augustine, in fact, when she come to see me, she said, 'Katherine is dead; she was my half-sister, and died without leaving a will, and leaving a lot, etc.' I asked her who her husband was, and she said Ambrose Rice; she thought he was her husband. I said, 'If that is a fact, you have no claim,' and we investigated, and the examination led to this proof. I wrote Ambrose to come to see me, and I asked if he wanted to do the same as Harris did, give Augustine a quitclaim deed. He said, 'No;' he wasn't going to do that. I said, 'Well, Ambrose, you had better go and see another lawyer then, I represent Augustine and can't take the case.' The next thing I knew Mr. Boddie asked

me to give him the facts under which I was proceeding. I went to Mr. Boddie and detailed the whole thing, and after that—after I told him the information I got from this old negro, and I told him if those were the facts he had no claim—and that I was at the courthouse one day, and Ambrose saw me and came up to this corner over here, and said, 'Lawyer Turnage, I am going away. I will leave the thing with you. I will have nothing else to do with it, but you will find Augustine is just as crooked as I said she was; you can't get anything out of Augustine,' and I really found he was telling the truth.''

The court below held that the defendants Eva B. Anderson and Mary P. Finlay, who assumed the building and loan trust deed executed by Augustine Blackburn and took a quitclaim deed from her, acquired lawful possession of the property, had title thereto, and that Davis Harris was the lawful surviving spouse of Katherine, and further held that the complainant, Rice, was estopped to assert any claim to this property against the defendants Eva B. Anderson and Mary P. Finlay.

It is very clear from Harris' testimony that neither he nor Katherine considered themselves husband and wife but for a short time, when Katherine discovered he was not divorced from Clara Lee. The record shows that Clara Lee lived with Harris as his wife for about fourteen years, and then they moved to Greenville and lived together there, and that there is no divorce. The presumption of law is overturned so that Harris cannot be held to be the husband of Katherine. Both Harris and Clara Lee, his wife, were witnesses in this cause, and neither claimed to be divorced from each other.

On the other hand, Rice married the Wynne woman, lived with her about two weeks, when she was forcibly taken from him by her former husband, and he has never heard from or of her since, and that marriage occurred in 1902, so that we think the marriage of Rice to Katherine Thomas is legally proved, and the fact that the Wynne woman was not heard of for more than seven

years before Rice contracted the marriage with Katherine raises the presumption that the second marriage was valid, and that wife No. 1 was dead.  See case of *Alabama & V. Railroad Co. v. Beardsley,* 79 Miss. 422, 30 So. 660, 89 Am. St. Rep. 660.

The chancellor also held that Rice was estopped to assert title to this land.

We have carefully scanned this record, discussed and quoted all that could be argued to constitute estoppel. First, that Rice took no action when the lawsuit was pending between Augustine Blackburn and her lawyer, A. H. Turnage.  The statements of all the witnesses are to the effect that Ambrose Rice claimed to be the lawful husband of Katherine at the time of her death, and so claimed to the attorney, and the attorney told Ambrose Rice that he (said Ambrose Rice) had no claim as husband.  We cannot see how his refusal to break into the litigation between other parties can constitute estoppel. On the other hand, it is rather difficult to imagine how he could have intervened in that litigation.  Second, the conversation imputed to him by Turnage, denied by him, does not constitute estoppel.  He simply said:

"I am going to leave it with you.  I am not going to have anything to do with it.  You will find Augustine crooked."

That was not a renunciation of his title, nor was there anything in this language or in his silence as to his claim of ownership, as the husband of Katherine, to mislead the attorney or any one else.

Very little testimony that was competent was offered in this case, but we deem it unnecessary to undertake to point out and segregate the competent from the incompetent.  In the case of *Staton* v. *Bryant,* 55 Miss. 261, our court said:

"Estoppel by conduct 'arises from an act or declaration of a person intended or calculated to mislead another, on which that other had relied, and has so acted,

or refrained from action, as that injury will befall him if the truth of the act or declaration be denied.' ''

Certainly, Rice had no interest in the litigation which occurred subsequent to the deed executed by Harris, claimant, and that record was not competent for any purpose, unless it be said that the decree of the chancellor would be competent as impeaching the testimony of the witness A. H. Turnage, but was not competent as against Rice's claim of title.

As to the statement of Rice that he would have nothing to do with the lawsuit, the lawyer, A. H. Turnage, had just advised the negro, that he (the negro) had no claim to the land. Besides, that statement does not amount to an estoppel by any of the definitions that we have been able to find of estoppel by conduct. Turnage decided the matter for himself and had Harris execute a deed to Blackburn, and Rice declined to execute a deed to her when requested to do so by Turnage.

With this statement, it is apparent and we are of opinion that Ambrose Rice, the complainant, was entitled to a decree establishing and quieting his title to the land in controversy. It appears, however, from the cross-bill and answer thereto, that no effort has been heretofore made to settle the question of taxes on the one hand, or rents on the other, and, for that purpose alone, we are remanding the case that the chancellor may hear proof and determine, by an accounting, the rights of the parties as to rents and taxes; but there will be a judgment here quieting and confirming the title of Ambrose Rice in and to the lands described in the bill.

*Reversed and remanded.*