EUROPEAN AND NORTH AMERICAN RAILWAY

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Cumberland.     Opinion, January 28, 1938.

*George F. Eaton,*
*Cook, Hutchinson, Pierce & Connell,* for plaintiff.
*Skelton & Mahon,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

DUNN, C. J.    What is in issue in this case is whether or not the terms of a lease of a railroad obligate the defendant as lessee, to pay the plaintiff as lessor, the federal income tax assessed upon rental received by it.

In 1882, the European and North American Railway, a Maine corporation owning and then operating a line of railroad about one hundred and fourteen miles long, from Bangor to the easterly boundary of the state, in the town of Vanceboro, demised, for nine hundred and ninety-nine years, beginning with April 1, in the aforesaid year, its entire system, to the Maine Central Railroad Company, also a corporation under local laws, and a common carrier by rail, this company's line coming into Bangor from the westward.

The lease was inclusive, not only of the lessor's road, its engines, cars, equipment, apparatus and supplies, without exception, but as well of all its other property and assets, real, personal and mixed, wheresoever, cash and causes of action falling into the category, together with all its rights, except only its right to be and maintain its organization.

The rent, set down in words, was one hundred and twenty-five

thousand dollars ($125,000.00) a year, payable in equal semi-annual instalments, the first on October 1, in the year of 1882. Such rent was, so the clause reserving it recites, fixed at exactly five per cent at the par value of the outstanding capital stock of the lessor. That the lessee should render accordingly, and compensate the lessor, in addition, as, to illustrate, for taxes, then in being, or not, laid against the demised property, or assessed on franchise, or earnings, is not in dispute. The controversy between these litigants, at the expense of repetition, solely relates to whether federal income tax, as applied to the rental, is for the lessee to defray.

The lease is, in itself, complete and perfect.

On taking possession, the lessee assumed, as the lease provided that it should, the lessor's obligations of any and every kind, and their performance, discharge and satisfaction ; the lessee proceeded to fulfill the lessor's duties as a public utility.

In effect, the lines of the two corporations were, for the purpose of operation, united as one. They so continue.

Certain provisions in the lease are of the tenor following:

"FOURTH. The said lessee further covenants, that it will pay the rent herein reserved, at the times, and in the manner herein provided, without demand of the same, and that it will pay all assessments, duties, charges and taxes, that have been or may hereafter be lawfully assessed, laid or imposed, on said European and North American Railway, or the stockholders thereof, by the United States, said State, or towns and cities, or by any power or authority whatever, or on the earnings, franchise, traffic, business, real estate, property, capital stock or shares of the capital stock of said European and North American Railway ; . . . . the intention being that the stockholders of said European and North American Railway shall, during the term of this lease, have from said lessee five per cent. per annum on the par value of the shares in the capital stock of said corporation, as hereinbefore provided, free from all taxes on said shares, and without any deduction whatever . . . . And it is further agreed that the rights of the stockholders and every one of the stockholders of said European and North American Railway to the said rental and income of five per centum annually on the par value of the said shares, and with-

out any deduction as above, shall never be changed, diminished or abridged; the Maine Central Railroad Company, however, not assuming any questions, or suits, between said European and North American Railway and its stockholders as to the disposition or distribution of the rental received from said lessee, nor any liability to account to individual stockholders for said rent, after the same has been paid, as above provided, by said lessee to said European and North American Railway. . ."

There is, it should not escape notice, in the obligations of the defendant, as lessee, no express mention of income taxes; there is no explicit reference to the possibility of the enactment by any taxing authority of an income tax law; nor, in the event of the enactment of a law of the kind, that a tax might be assessed against the plaintiff lessor.

No federal income tax was in force when the lease was made. Acts taxing incomes had, beginning in 1861, been enacted by the United States Congress. These acts lasted through the Civil War period. They were classed under the head of excises, duties and imposts. *Brushaber* v. *Union Pacific Railroad*, 240 U. S., 1, 15, 36 S. Ct., 236, 60 Law Ed., 493.

Under the Civil War Act, 13 Stat., 223, as amended, the tax on corporations was based on gross income and on profits, including dividends and interest paid, and, in so far as dividends were paid, the stockholders eventually paid the tax, for it was withheld from the dividends. *Rensselaer, etc. Co.* v. *Delaware, etc. Co.*, 152 N. Y. S., 376, 380.

Corporate income taxes now form a part of the internal revenue system of the United States. 26 U. S. C. A., Sec. 13, *et seq*.

The present income tax is not assessed against, nor is it paid by the stockholders.

Touching corporations, income taxes are not assessed and levied directly on property, but against the gain or income derived therefrom. *Stony Brook Railroad Corporation* v. *Boston and Maine Railroad*, 260 Mass., 379, 394, 157 N. E., 607. Such taxes are exacted upon the basis of annual earnings. *Cleveland Railroad Company* v. *Commissioner of Internal Revenue*, 36 Fed. (2nd) 347, 349.

The covenant in the instant lease, true enough, makes use of the words "assessments, duties, charges and taxes, that have been or may hereafter be lawfully assessed, laid or imposed, on said European and North American Railway." It is significant, though, that agreement does not stop there. A stipulation includes taxes on earnings; still another, in effect, that payment by the lessee, all in all, should always be adequate in amount to afford, not dividends merely, but at a given ratio to par, per annum.

The income of the plaintiff, aside from an annual office maintenance allowance from the defendant of five hundred dollars, has consisted chiefly, if indeed not exclusively, of the rental. The activities of the lessor have been those of keeping up its corporate entity, collection of the rental, and apportionment thereof among its stockholders.

Defendant paid the income tax, beginning with 1913, and thence to 1936, assessed against plaintiff on its rental. For a time, payments were as a supposed obligation; more recently, under protest, without prejudice to liability.

In this class of cases, the rule, in certain jurisdictions, is that unless the lease expressly provides for the payment of taxes on the income from rentals, the burden of payment is not on the lessee. *Brainard et al.* v. *New York Central Railroad Company et al.*, 242 N. Y., 125, 151 N. E., 152; *Young* v. *Illinois Athletic Club*, 310 Ill., 75, 141 N. E., 369; *Illinois Central Railroad Company* v. *Indianapolis Union Railway Company*, 6 Fed., (2nd) 830; *Catawissa Railroad Company* v. *Philadelphia & Reading Railway Company*, 255 Pa., 269, 99 A., 807; *Boston and Maine Railroad* v. *Wilton Railroad Co.*, 87 N. H., 416, 181 A., 545.

The words "or otherwise," in addition to property franchise and capital stock, sufficed for differentiation. *Whitlock* v. *Boston and Maine Railroad*, 29 Fed., (2nd) 351.

In *Boston and Providence Railroad Corporation* v. *Old Colony Railroad Company et al.*, 269 Mass., 190, 169 N. E., 157, 158, is this paragraph, quoted here approvingly:

"If it fairly appears from the lease as a whole that the parties intended to impose upon the lessee ultimate obligation to pay an income tax assessed upon the lessor in respect to the

rental, that intention will be given effect, although there is in express words no provision to that effect in the lease."

The particular lease, not some other contract, the words of such lease, the company they keep, the meaning the language itself gives out, the purpose effectively expressed, — all these are of relevancy in seeking the intention of the makers of the instrument.

In this lease, there is no ambiguity. Evidence of what has been done, the so-called rule of practical construction, finds no place. *Ames* v. *Hilton*, 70 Me., 36, 43 ; *Snow* v. *Pressey*, 85 Me., 408, 27 A., 272 ; *Oakland Woolen Company et al.* v. *Union Gas and Electric Company et al.*, 101 Me., 198, 63 A., 915 ; *Stanley* v. *True*, 114 Me., 503, 96 A., 1057.

Nor does estoppel arise. The position of the parties has not been altered. *Rice* v. *Washington County Building & Loan Association*, 145 Miss., 1, 11, 110 So., 851 ; *Allen* v. *Goodnow*, 71 Me., 420, 425.

Does this lease, the contract actually made, integral and total, make the defendant liable to the plaintiff, as the latter has declared?

The conception of lessor and lessee, one and both, was that the relation of landlord and tenant should exist for nearly ten centuries.

The parties provided for a rental, expressed definitely. They took care, besides, as it was competent for them to do, that the rental, so defined, should, from time to time, be buttressed, as occasion might present, by the payment of assessments, duties, charges and taxes, to the end that, yearly, there might be basis for the stockholders of the lessor to receive, as dividends, five per cent on their shares, "without any deduction whatever."

Herein is this case distinguishable from the doctrine of cases decided by other courts, of citation by defendant's counsel in their exhaustive brief.

The plaintiff is entitled to prevail.

Agreeably to a stipulation of the report, the case is sent down for the Superior Court to enter judgment for plaintiff; damages, twenty thousand one hundred seven dollars and twelve cents ($20,107.12), with interest; costs follow.

*It is so ordered.*