Hillsborough, }
Nov. 5, 1935. }

BOSTON & MAINE RAILROAD *v.* WILTON RAILROAD CO.

418

*Demond, Woodworth, Sulloway, Piper & Jones* (*Mr. Demond* orally), for the plaintiff.

*Ivory C. Eaton, Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the defendant.

BRANCH, J. In the case of *Boston & Maine Railroad* v. *Peterborough Railroad*, 86 N. H. 217, this court dealt with a situation obviously similar in most of its important aspects to that here presented, and the answers to many of the defendant's arguments are to be found in the conclusions there reached.

The first proposition advanced by the defendant is that "the rent stipulated in the lease was intended to be available for dividends and cannot be reduced without defeating the primary purpose of the lease." We are told that "the covenant of the lessee to pay 'all public taxes whatsoever that shall be placed upon (the lessor) on account of its property, franchise or capital stock' was plainly included as one of a series of provisions calculated to preserve the rental of the lessor for dividend purposes." It is also argued that "the lease as a whole shows a constant intention to keep the rental wholly available for the payment of dividends to the lessor's stockholders." Similar arguments were advanced in the *Peterborough* case above referred to and were rejected for reasons equally applicable to the facts now before us.

The suggestion that "the primary purpose of the lease" was to make the full amount of the agreed rental "available for dividends" to the defendant's stockholders throughout the entire term of the

lease is a bit of hyperbole ascribable to the zeal of counsel. The claim that this was the primary purpose of the lease necessarily implies that it was the primary purpose of both parties, and the idea that the plaintiff was primarily concerned in securing the payment of a net amount as dividends to the defendant's stockholders is, of course, absurd. The primary purposes of the lease in regard to which the minds of the parties met were, to secure to the plaintiff control of the defendant's railroad, and to the defendant, the payment of the stipulated rental. To the accomplishment of these two purposes all the terms and conditions of the lease were subservient. The collateral and unexpressed benefits which each of the contracting parties may have hoped to obtain for itself as a result of the subordinate conditions of the agreement cannot be included within the purposes of the lease, either primary or subsidiary. Even though the end result which the defendant planned to attain from the operation of the lease may have been the payment to it of a stipulated sum which might be passed on, undiminished by any charges, to its stockholders in the form of dividends, the accomplishment of this result cannot be regarded in any proper sense as one of the purposes of the lease.

"The argument that there is implicit throughout the lease the idea that the money paid to the lessor semi-annually was to be available for dividends, at once suggests the inquiry: If there had been such an agreement why was it not expressed?" *Boston & Maine Railroad* v. *Railroad, supra,* 221. An examination of authorities cited by the defendant lends added force to this inquiry, for in *Schlafly* v. *D'Arcy,* 1 Fed. Rep. (2d) 297, 299, and *Republic Building* v. *Gaertner,* 201 Ky. 509, cited by the defendant, there were express agreements specifically designed to accomplish similar results. When pressed for an answer to the above query, counsel at the argument conceded that the plaintiff was evidently unwilling to assume the payment of all taxes against the lessor which the ingenuity of man might devise. This admission was of course fatal to his contention that the primary purpose of the lease was to secure to the defendant a certain sum which might be paid out undiminished as dividends.

If it had been the intention of the parties to include federal income taxes assessed against the defendant in the obligations assumed by the plaintiff, as lessee, it is fair to assume that such intention would have been stated. "An obligation of this kind would not have been left to doubtful inference." *Boston & Maine Railroad* v. *Railroad, supra,* 220. Here again the answer to the defendant's argument is

strengthened by the authority upon which the defendant relies, for the lease which was construed in *Whitlock* v. *Railroad*, 29 Fed. Rep. (2d) 351, contained language which literally embraced every species of tax levied against the lessor. It is highly significant that this lease contained language which, if unqualified, would have imposed such a burden upon the plaintiff. If it had been provided simply that "said second party hereby covenants and agrees with said first party that it will pay all public taxes, assessments and charges whatsoever that shall be placed upon said first party," the obligation of the plaintiff to pay the present taxes would be clear. The fact that this language was at once qualified by the addition of the words "on account of its property, franchise or capital stock" clearly indicates that the plaintiff did not assume an unqualified obligation to pay all taxes assessed against the defendant.

The paragraph of the lease above quoted provides for the payment to the lessor semi-annually, of "the sum of eight thousand four hundred dollars . . . or such sum as may on the day on which said payment becomes due be equal to three and one half per cent upon the then existing capital stock of said Wilton Railroad;"

With reference to these provisions, the following language taken from the opinion in the *Peterborough* case is equally applicable. "This payment is there denominated 'rent'. There is nothing in this paragraph which can be construed into a promise or guaranty that the rent so paid will not be taxed in the hands of the lessor, or that it shall all be available for distribution as dividends to stockholders." Undoubtedly other provisions of the lease "indicate that the lessor sought to relieve itself of certain charges against its gross income. But there is no promise by the lessee to pay all charges. The obligations assumed were specific, and of course include only that which was specified." *Boston & Maine Railroad* v. *Railroad*, 86 N. H. 217, 221.

In the second part of its argument the defendant seeks to demonstrate that "the lessee's express agreement to pay all public taxes whatsoever that shall be placed upon the lessor on account of its property, franchise or capital stock obligates it to pay the federal corporate income tax." In support of this proposition the defendant argues that the federal corporate income tax assessed against it must be regarded either as a tax upon its property or an excise tax upon its franchise to do business as a corporation and that, in either event, it comes within the provision of the lease which requires the plaintiff to pay all public taxes assessed against the defendant "on account of its property, franchise or capital stock."

With reference to the claim that the federal income tax is a tax on property, counsel for the defendant note "a persistent division of opinion as to whether an income tax is a property tax or an excise tax" but place reliance upon the case of *Pollock* v. *Company*, 157 U. S. 429, which established the principle that "a tax laid upon rent is a direct tax upon the land out of which the rent issues." *Opinion of the Justices*, 84 N. H. 559, 573. Reference is also made to numerous decisions of other courts in which the *Pollock* case has been cited and followed.

The *Pollock* case, however, as construed in the later opinions of the supreme court of the United States, (*Knowlton* v. *Moore*, 178 U. S. 41, 80; *Spreckles Sugar Refining Co.* v. *McClain*, 192 U. S. 397; *Flint* v. *Company*, 220 U. S. 107) falls far short of establishing the rule that all income taxes are taxes upon property. Thus in *Brushaber* v. *Railroad*, 240 U. S. 1, 16-17, it was said: "the conclusion reached in the Pollock Case did not in any degree involve holding that income taxes generically and necessarily came in the class of direct taxes on property, but, on the contrary, recognized the fact that taxation on income was in its nature an excise entitled to be enforced as such unless and until it was concluded that to enforce it would amount to accomplishing the result which the requirement as to apportionment of direct taxation was adopted to prevent . . . ." Clearly the *Pollock* case lends no support to the suggestion in the plaintiff's brief that an income tax is a tax on property because "gain or profit from capital or labor is property."

The principle which finally emerged from the *Pollock* case and its successors was that a tax on income derived from "property, real or personal, was the legal equivalent of a direct tax upon the property from which said income was derived and hence must be apportioned," but "duties, imposts and excises, which are not the essential equivalent of a tax on property generally, real or personal, solely because of its ownership," are not direct taxes upon property and hence do not come within the apportionment requirement of the federal constitution. *Knowlton* v. *Moore*, 178 U. S. 41, 80; *Flint* v. *Company*, 220 U. S. 107.

Except in cases involving questions of direct taxation under the federal constitution the idea that income taxes are taxes on property has not been hospitably received. On the contrary, it has been generally recognized that "the natural as well as the legal significance of income in connection with taxation is something different from property." *Stony Brook Railroad* v. *Railroad*, 260 Mass. 379, 384.

"A tax on incomes is not a tax on property, and a tax on property does not embrace incomes." *Peaslee*, J., in *Opinion of the Justices*, 77 N. H. 611, 620, quoting Black, Income Taxes (2d *ed.*) *s.* 188. We are, therefore, clearly of the opinion that the federal income taxes here in question cannot be regarded as public taxes placed upon the defendant "on account of its property" within the meaning of the lease. Neither are they taxes placed upon the defendant on "account of its . . . capital stock," since a "tax upon capital stock would be in substance one on the property represented by the stock." *Boston & Maine Railroad* v. *Railroad*, 86 N. H. 217, 220.

The alternative contention of the defendant that the federal income tax, if not a tax upon property, must be regarded as an excise tax upon the defendant's "franchise" to do business as a corporation might have presented serious difficulties if this case had arisen before the adoption of the sixteenth amendment to the constitution of the United States and had involved the corporation tax law of 1909. It is true that the constitutionality of that act was sustained upon the theory that a tax levied thereunder was "an excise tax upon the conduct of business in a corporate capacity," (*Stratton's Independence* v. *Howbert*, 231 U. S. 399, 414) but this decision involved, as a necessary corollary, a conclusion that the taxes imposed by that statute were not in reality income taxes at all. "As repeatedly pointed out by this court, the corporation tax law of 1909—enacted, as it was, after Congress had proposed to the legislatures of the several states the adoption of the sixteenth Amendment to the Constitution, but before the ratification of that Amendment—imposed an excise or privilege tax, and not in any sense a tax upon property or upon income merely as income." *United States* v. *Whitridge*, 231 U. S. 144, 147. "As has been repeatedly remarked, the corporation tax act of 1909 was not intended to be and is not, in any proper sense, an income tax law." *Stratton's Independence* v. *Howbert*, 231 U. S. 399, 414.

The assertion in the defendant's brief that the sixteenth amendment to the federal constitution authorizing congress to levy taxes on income "from whatever source derived without apportionment" has been held "not to alter the fundamental character" of subsequent federal corporate income taxes, is not sustained by the authority cited in its support, *i.e. Brushaber* v. *Railroad*, 240 U. S. 1. On the contrary, it was held in *Stanton* v. *Company*, 240 U. S. 103, 114, that a tax levied against a mining company under the income tax law of 1913 was "a true excise levied on the results of the business of carrying on mining operations," which is quite a different proposi-

tion.   Nowhere in that case or in the *Brushaber* case do we find any suggestion that an income tax imposed upon a corporation under the act of 1913 constituted a tax "upon its franchise to do business as a corporation."

The statutory provisions under which several of the taxes here involved were assessed are to be found in U. S. Code, 1926, Title 26, headed "Internal Revenue," chapter 19 headed "Income Tax," part 3 headed "Corporations." These provisions, therefore, form a part of the general income tax system of the federal government and the taxes therein provided are to be regarded as true income taxes. Such taxes, for the purposes of technical classification, probably come under the heading of excise taxes (*Opinion of the Justices*, 77 N. H. 611, 615) although since the sixteenth amendment, the necessity for crowding them into any definite category has largely disappeared. It is sufficient to state that the "incidence of the tax is determined by some fact other than mere ownership." *Conner* v. *State*, 82 N. H. 126, 128, 129. At the present day, however, there exist no reason and no binding authority for holding that federal income taxes when levied against a corporation are imposed upon its franchise to do business in that capacity. We, therefore, conclude that the taxes in question were not public taxes placed upon the defendant "on account of its franchise" within the meaning of the lease.

Since the taxes in question were not "placed upon" the defendant on account of either its "property," its "franchise" or its "capital stock" it follows that the plaintiff is not bound by the terms of the lease to pay them, and it is so adjudged.

From the foregoing conclusions it also follows that the plaintiff is entitled to a money judgment for the amount of the taxes paid by it which are included within the terms of the conditional reimbursement agreement above referred to.

*Judgment for the plaintiff.*

All concurred.