**UNITED STATES v. WARREN R. CO.
et al.**

**SAME v. SYRACUSE, B. & N. Y. R. CO.
et al.**

**SAME v. PASSAIC & D. R. CO. et al.**

Nos. 138–140.

Circuit Court of Appeals, Second Circuit.

April 2, 1942.

Austin J. McMahon and Douglas Swift, both of New York City (Chauncey H. Hand, Jr., of New York City, of counsel), for Delaware, L. & W. R. Co., defendant-appellant.

Mathias F. Correa, U. S. Atty., of New York City (Myles J. Lane, Asst. U. S. Atty., of New York City, of counsel), for the United States of America, plaintiff-appellee.

Before SWAN, AUGUSTUS N. HAND and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The above three cases are before us on separate appeals by the defendant, the Delaware, Lackawanna and Western Railroad Company, which have been taken from separate judgments in favor of the United States of America and against both defendants in each case for the amount of certain income taxes due from the Warren Railroad Company for the years 1934 and 1935, from the Passaic and Delaware Railroad Company for the years 1934 and 1935, and from the Syracuse, Binghamton & New York Railroad Company for the years 1933, 1934 and 1935. The District Court granted judgments for the plaintiff against the Delaware, Lackawanna & Western Railroad in each case on the theory that it assumed the obligation of its lessors, namely, the Warren Railroad Com-

pany, Syracuse, Binghamton & New York Railroad Company and the Passaic and Delaware Railroad Company to pay the income taxes assessed upon those companies for the several years in question. Judgments against the lessors were granted by default.

Perhaps the reasoning of the District Court might be a sufficient basis for upholding the judgments, if the interpretation of the clauses in the leases which provide for payment by the Delaware, Lackawanna and Western Railroad of the lessors' taxes were to be regarded as an entirely new and unsettled problem. But the decisions of the New York and of other courts preclude such an interpretation.

The contractual rights and obligations created by the leases are determined by the law of the place where the engagements were entered into, which was the State of New York. Beale, Conflict of Laws, Vol. II, § 340.1; Restatement Conflict of Laws § 341; In re Barnett, 2 Cir., 12 F.2d 73. It has been universally held both by the courts of New York and other states that a covenant by a lessee to pay the income taxes of the lessor is not within the terms of the contracts unless the obligation is clearly and directly specified. The pertinent provisions and the tax covenants in the leases to the Delaware, Lackawanna and Western Railroad of the three railroads are set forth below in notes 1, 2 and 3.

In the Warren lease, article "Fifth" only provides for payment of taxes "imposed upon the premises and property * * * or upon any part or parcel thereof." It does not cover taxes upon the income. In Brainard v. New York Central R. R. Co., 242 N.Y. 125, 151 N.E. 152, 154,

---

1 In the Warren Railroad lease under date of October 1, 1857, it was provided that the lessee, Delaware, Lackawanna and Western Railroad, should pay directly to the stockholders of the lessor as rent 5¼% of the par value of their shares and should also make the following payments:

"Fifth, That they will from time to time and at all times during the continuance of this indenture, pay and discharge all taxes, assessments and impositions which shall or may be legally taxed, assessed or imposed upon the premises and property hereinbefore leased, granted and demised, or upon any part or parcel thereof whenever the same shall become due and payable.

\*   \*   \*   \*   \*   \*   \*

"Tenth, That they will * * * pay and discharge all legal claims and demands which now may exist or hereafter accrue against the said Warren Rail Road Company, for or on account of any matter or thing connected with or relating to the said railroad, and all costs, counsel fees, and expenses thereto legitimately appertaining; so that the stockholders shall, in accordance with what is intended to be the true intent and meaning of this indenture, receive upon their stock the rate of interest hereinbefore stipulated, without any abatement or deduction whatsoever."

2 The lease of the Passaic and Delaware Railroad dated November 1, 1882, contained a provision for payment of the rent directly to the shareholders at the rate of 5% per annum on the par value of the stock, and in addition there was the following tax covenant:

"And that the said party of the second part will, during the enjoyment of the demised property and estate under this lease, pay and discharge all taxes and assessments which are or may be imposed, levied or assessed on any of the property hereby granted, leased or demised, or intended so to be, or on the business, or any of the business done on or with said property, or on the income or profits of the said business, or on the said party of the first part as a corporation, or on any of its rights, privileges or franchises by the United States, or any state, county, township, municipal or other authority having legal authority to impose, assess, levy and collect taxes, imposts or duties."

3 The lease of the Syracuse, Binghamton & New York Railroad dated October 1, 1912, contained a provision for payment of rental directly to the stockholders at the rate of 12% per annum on the par value of the stock. It also contained the following tax covenant:

"And that the said party of the second part will, during the enjoyment of the demised property and estate under this lease, pay and discharge all taxes and assessments which are or may be imposed, levied or assessed on any of the property hereby granted, leased or demised, or intended so to be, or on the business, or any of the business done on or with said property, or on the income or profits of the said business, or on the said party of the first part as a corporation, or on any of its rights, privileges or franchises, by the United States, or any state, county, township, municipal or other authority, having legal authority to impose, assess, levy and collect taxes, imposts or duties."

45 A.L.R. 751, the court said that: "Unless the lease expressly provides for the payment of taxes on the income from rentals received under the lease, the imposition of such a burden on the lessee is not justified." Accordingly the Court of Appeals of New York there held that income taxes were not covered by a clause providing that the lessee pay all taxes which might become chargeable on the lessor railroad on its "road or property * * * by reason of its ownership thereof." The government contends that the provisions in Article "Tenth" that the lessee pay all claims against the lessor so that the stockholders shall receive the prescribed rate of interest upon their stock "without any abatement" necessarily covers income taxes but the clause in terms does no more than require payment to the stockholders of their net rentals after paying expenses and taxes on the leased property and does not include such taxes as may be imposed on them as recipients of income unless the imposition is indubitably clear or unless such income taxes are to be withheld by the lessee. Catawissa R. R. Co. v. Philadelphia & R. Ry. Co., 255 Pa. 269, 99 A. 807; Park Building Co. v. George P. Yost Fur Co., 208 Mich. 349, 175 N.W. 431; Young v. Illinois Athletic Club, 310 Ill. 75, 141 N.E. 369, 30 A.L.R. 985. The covenant in Article "Tenth" to pay all claims "for or on account of any matter or thing connected with or relating to the said railroad" fails to cover income taxes which would not relate to the railroad but to its earnings. Woodruff v. Oswego Starch Factory, 177 N.Y. 23, 68 N.E. 994; Boston & Maine R. R. v. Peterborough R. R., 86 N.H. 217, 166 A. 275.

■■ The covenants in the Passaic and Syracuse leases likewise seem insufficient to include income taxes. It is true that the covenants are somewhat broader than in the Warren lease. Taxes "on the business" are not on income of any sort and the railroad business referred to is not that of the lessor but of the lessee which is only running the railroad business on its own account. Rensselaer & Saratoga R. R. Co. v. Delaware & Hudson Co., 168 App. Div. 699, 154 N.Y.S. 739, affirmed 217 N. Y. 692, 112 N.E. 1072; Boston & Providence R. R. v. Old Colony R. R. Co., 269 Mass. 190, 169 N.E. 157; Catawissa R. R. Co. v. Philadelphia & R. Ry., 255 Pa. 269, 99 A. 807. Taxes on the "income or profits of the business" may on first impression, seem to come within the category of income taxes, but again, these taxes are not on the income of the business of the lessors, who are not conducting the business, but on that of the lessee who runs the railroads. McCoach v. Minehill Ry. Co., 228 U.S. 295, 305, 33 S.Ct. 419, 57 L.Ed. 842.

■ The further clause of the Passaic and Syracuse leases in which the lessee covenants to pay all taxes on the lessors "as a corporation, or on any of its rights, privileges or franchises" also does not include income taxes. Income taxes are not imposed upon the lessors because they are corporations. The clause was intended to cover "franchise taxes." Boston & Maine R. R. v. Wilton R. R. Co., 87 N.H. 416, 181 A. 545. In other words, it was inserted for the purpose of rendering the lessee liable to pay the lessors' excise tax to do business as a corporation and any special excise taxes. Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312.

■ In our opinion an overwhelming weight of pertinent decisions precludes us from holding that the covenants in any of the three leases embrace the income taxes which the United States seeks to recover. A persuasive consideration in support of this conclusion is that all the leases were drawn at a time when there were no income taxes and only in case of the Syracuse lease were such taxes even in prospect. Because there was no agreement between the primary parties to pay income taxes the government can have no claim as a third party beneficiary and, for the same reason, can have no lien on any right of the lessors to require the lessee to pay their income taxes.

■■ Finally, the government seeks to sustain the judgments upon the theory that it has a lien on the rentals accruing under the leases. It can, however, have no right under any theory beyond that of the lessors themselves. In United States v. Western Union Telegraph, 2 Cir., 50 F. 2d 102, we said rentals could not be reached because there could be no levy on intangible rights. But since that decision was rendered we have held that the indebtedness of a third party to a taxpayer is subject to distraint and upon demand must be surrendered to the collector by virtue of § 3710, Title 26, U.S.C.A. Int. Rev.Code. United States v. Long Island

Drug Co., 2 Cir., 115 F.2d 983. The fact that by the terms of the leases the rentals are to be paid to the shareholders, rather than to the corporate lessors, can make no difference in the result. The rights of the shareholders are derivative and the income is that of the corporation and can only be paid to them by its authority. Here the income was at all times that of the lessor, though under its contract it was directly distributable to the latter's shareholders. Consequently the lessor was subject to liability for all income taxes upon rentals which had accrued. This is made clear in the recent opinion of the Supreme Court in United States v. Joliet & Chicago R. R. Co., 62 S.Ct. 442, 86 L.Ed. ——, decided January 19, 1942. Our decision in Gold & Stock Telegraph Co. v. Commissioner, 2 Cir., 83 F.2d 465, was to the same effect.

The difficulty with levying upon the rentals prior to their due date is because of the common law rule that a creditor cannot levy upon rent until it becomes payable. But diversion of this rent, which is the only asset from which the income taxes can readily be satisfied, is threatened. To divert it manifestly hinders and delays creditors of the lessors and is a wrong against which a court of equity may relieve them either through an original suit or by so amending the present judgment as to provide that the Delaware, Lackawanna and Western Railroad be enjoined from paying over to the shareholders any rentals accruing under the leases until the income taxes due from the various lessors shall be paid and the collector shall have an opportunity to make a levy on the rentals.

The amended complaints in the above actions set forth claims of two varieties, the first to recover on the covenants which we have discussed and found to be insufficient to include income taxes, and the second to recover because of failure to respond to the notice and demand served by the collector of internal revenue upon the lessee railroad.

The sections of the Internal Revenue Code describing the property subject to lien, distraint and levy and also the liability for failure to surrender property levied upon are §§ 3670, 3690, 3692 and 3710 which are set forth below.[4]

The District Court entered judgments against the lessors and the lessee in all three actions, both on the theory that the government was a third party beneficiary and also on the theory that, having

4 "§ 3670. Property subject to lien

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. 53 Stat. 448."

"§ 3690. Authority to distrain

"If any person liable to pay any taxes neglects or refuses to pay the same within ten days after notice and demand, it shall be lawful for the collector or his deputy to collect the said taxes, with such interest and other additional amounts as are required by law, by distraint and sale, in the manner provided in this subchapter, of the goods, chattels, or effects, including stocks, securities, bank accounts, and evidences of debt, of the person delinquent as aforesaid. 53 Stat. 451."

"§ 3692. Levy

"In case of neglect or refusal under section 3690, the collector may levy, or by warrant may authorize a deputy collector to levy, upon all property and rights to property, except such as are exempt by the preceding section, belonging to such person, or on which the lien provided in section 3670 exists, for the payment of the sum due, with interest and penalty for nonpayment, and also of such further sum as shall be sufficient for the fees, costs, and expenses of such levy. 53 Stat. 452."

"§ 3710. Surrender of property subject to distraint

"(a) Requirement. Any person in possession of property, or rights to property, subject to distraint, upon which a levy has been made, shall, upon demand by the collector or deputy collector making such levy, surrender such property or rights to such collector or deputy, unless such property or right is, at the time of such demand, subject to an attachment or execution under any judicial process.

"(b) Penalty for violation. Any person who fails or refuses to so surrender any of such property or rights shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the

a lien (superior to the rights of stockholders) upon such property of the lessors as was levied on by the collector, the lessee failed to surrender the same after notice and demand. The former theory cannot be sustained for the reasons we have given, the latter is erroneous so far as it involves the direction of a personal judgment against the lessee for the amount of any taxes in excess of that for which a levy has been made, but is sound so far as it involves rentals payable and levied upon prior to entry of judgment. We cannot discover that at the time when the levies were attempted any rentals were due and payable, or that the lessee was in possession of any property of the lessors at the time the notices of lien and levy were served. Accordingly the judgments that the lessee, Delaware, Lackawanna & Western Railroad Company, pay the amount of income taxes, interest and costs as a personal obligation were improper and should be reversed and the cases remanded to the District Court in order that the United States may file a supplemental petition for a judgment in each action providing: (1) That the lessee be enjoined from making further payments to the stockholders of the lessors out of any rentals now or hereafter payable until the United States shall, from time to time, have an opportunity to levy thereon so that the income taxes and interest may be satisfied; (2) that the lessee pay to the collector the amount of rentals levied upon, from time to time, which may be necessary to satisfy the income tax obligations.

Notice of hearing upon the petition shall be given in each action to both the lessor and the lessee. While under Rule 54, 28 U.S.C.A. following section 723c, it might be sufficient for us merely to direct amendment of the judgments as respects the lessee, it is perhaps better practice to afford lessors and lessee a hearing in the District Court as to the judgments and injunctions proposed. Notice is to be given to the lessors ex abundante cautela. Inasmuch as the rights of the stockholders of the lessors are for tax purposes purely derivative, notice of the hearings need not be given to them and, as the lessors have taken no appeal, the judgments against them should stand.

The above procedure is the counterpart of a judgment creditor's suit in which it is not required that execution be issued and returned unsatisfied. This is because the indebtedness of the judgment debtor is beyond question and the rentals are substantially the only source from which the taxes may be satisfied. Hatch v. Morosco Holding Co., 2 Cir., 50 F.2d 138, 140. See also Federal Rule 18(b). The appointment of a receiver would only entail expense and delay. An injunction is sufficient to remove any barrier to a levy and to enable the collector to reach the rentals as they accrue.

The judgments against the defendant Delaware, Lackawanna & Western Railroad Company are reversed and the causes are remanded to the District Court with directions to proceed in accordance with this opinion.

amount of the taxes (including penalties and interest) for the collection of which such levy has been made, together with costs and interest from the date of such levy.

"(c) Person defined. The term 'person' as used in this section includes an officer or employee of a corporation or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs. 53 Stat. 456."