AMERICAN RAILROAD COMPANY OF PUERTO RICO, Petitioner and Appellant, *v.* MINIMUM WAGE BOARD OF PUERTO RICO, Appellee.

No. 105.   Argued December 12, 1947.—Decided May 24, 1948.

---

James R. Beverley, R. Castro Fernández, José López Baralt, and Iván Reichard, for appellant. Lino J. Saldaña (Ismael Soldevila on the brief) for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Pursuant to the provisions of § 24 of Act No. 8 of April 5, 1941 (Sess. Laws, pp. 302, 322), as amended by Act No. 217 of May 11, 1945 (Sess. Laws, pp. 680, 698),[1] the American Railroad Company of Puerto Rico filed in this Court a petition for review, in which it asks us to set aside Mandatory Decree No. 12, issued by the Minimum Wage Board on December 4, 1946. Said decree fixes the minimum wages, the maximum periods of labor, and the conditions of work for the employees of the transportation service in Puerto Rico.

The petitioner admits that it is unquestionable that the State may exercise its police power to regulate private enterprises as to those matters which affect the health, safety,

---

[1] Section 24 of Act No. 8 of 1941, was further amended by Act No. 451 of May 14, 1947 (Sess. Laws, pp. 950, 968), took effect on July 1, 1947, but this new amendment does not affect in any way the questions discussed herein.

738

morals, and well-being of its citizens. Also, that the fixing of minimum wages for the industries falls within that police power. It has been so held by this Court in the following cases: *Escudero* v. *Minimum Wage Board,* 66 P.R.R. 561, wherein Decree No. 10 fixing minimum wages for the milk industry was construed; *Hospital San José* v. *Minimum Wage Board,* 63 P.R.R. 712, wherein Decree No. 4 in connection with wages and conditions of work in clinics and hospitals was upheld; and *Luce & Co.* v. *Minimum Wage Board,* 62 P.R.R. 431, which involved Decrees Nos. 2 and 3 of said Board in connection with the sugar industry in this Island. But it first maintains that the Minimum Wage Board of Puerto Rico exceeded its power and acted unlawfully in issuing the said mandatory decree, insofar as it fixes different minimum wage rates for skilled, semiskilled, and unskilled workers, thus making an unreasonable, unlawful, and unconstitutional classification of human beings. In the declaration of principles of said Act No. 8 of 1941, it is stated that, through the exercise of the power which the Legislature of Puerto Rico has to pass laws for the protection of the life, health, and safety of the employees and workers, its policy is to correct and as rapidly and as practicable to eliminate the labor conditions detrimental to the maintenance of the standards of living necessary for the health, efficiency, and general well-being of the workers in the different occupations, without substantially curtailing employment or earning power; that the public policy of this Act is to protect workers and their means of livelihood and to endeavor to give them assurance of conditions favorable to their economic stability and natural expansion and, to that effect, the Minimum Wage Board created by it, shall carry out the purposes of this Act and shall fix wages, having due regard to the costs, the financial condition of industries and branches of production, the market fluctuations, and the special conditions prevailing in each locality, as well as the living and working conditions of the workmen.

It is provided by its § 12, as amended by Act No. 217 of May 11, 1945 (Sess. Laws, p. 680), that "The board may classify the work in any industry, business, or occupation, according to the nature of the services to be rendered, as well as to fix minimum wage scales suitable for various kinds of works, for the purpose of fixing for each classification the highest minimum wage rate compatible with the purposes of this Act." When in the mandatory decree the employees of the petitioner were classified as skilled, semiskilled, and unskilled and there were fixed for them, in the railroad enterprises, hourly wages of 40, 30, and 25 cents respectively, what was done was merely to follow the clear and express language of § 12, thus classifying the workers in this industry according to the nature of the services to be rendered by each workman, and prescribing minimum wages suitable for the various kinds of work done by them. We find no constitutional objection to a classification of workmen such as that made by the Minimum Wage Board in this case.

 At the hearing held in this Court, the petitioner also maintained that the classification of its workers as skilled, semiskilled, and unskilled is vague and uncertain. We do not agree. Although in Decree No. 12 the terms skilled, semiskilled, and unskilled are not defined,[2] nevertheless it will be easy for the petitioner to classify its employees in the manner provided by the decree. This is shown by the testimony of

---

[2] Mandatory Decree No. 12 was amended on January 8, 1948, to take effect on February 1, 1948. In the amended decree these terms are defined as follows:

"C—By *skilled laborer* is meant every workman who has full knowledge, understanding, and mastery of the manual technique and of the process involved in the performance of any of the occupations generally acknowledged as: trades, such as, but not limited to, the following: mechanics, electricians, carpenters, saddlers, blacksmiths, painters, tinmen, solders, plumbers, turners, and cabinetmakers. He should have ability to do the work that may be assigned to him within his trade with an independent mind and without the necessity that he be instructed in detail as to how he should do his work, it being sufficient to indicate to him the kind of work that it is desired to effect. He should have acquired previous experience in the work he is to perform.

Mr. José P. Gorbea and Mr. Ettiene Totti before the Board and by "Exhibit FP-10," presented by said petitioner which contains a summary of the hours worked and paid during 52 weeks to skilled, semiskilled, and unskilled employees. Moreover, since said terms have been defined in the amended decree, such vagueness and uncertainty, if any, has disappeared, although, of course, the amended decree is effective only from February 1, 1948. The first error assigned is nonexistent.

■ The petitioner next urges that in approving Mandatory Decree No. 12, the Board acted in excess of its powers insofar as it provided that every employee was entitled to vacations with full pay. Said decree, after indicating what the transportation service shall comprise, what is meant by "employer," and defining "employee or worker," "per week," and "work or labor," and after fixing minimum hourly wages and the regular and extraordinary hours of labor, provides in its Art. 4 that every employee shall be entitled, for his work during 6 consecutive days or 48 hours in any week, to *one day of rest;* and that if the employer causes him or permits him to work during said period of rest he shall pay him for such labor at the rate of not less than double the rate of wages he has been paying him. It is also provided in said Article that every employee or workman shall be entitled to a *vacation,* with full pay, which shall be paid when he starts

---

"D—By *semiskilled laborer* is meant every laborer who, without having the degree of knowledge, understanding and mastery of the manual technique and of the processes which are required from the skilled laborer for the practice of his trade, possesses, however, certain knowledge which permits him to execute under supervision certain work within his trade. There shall be comprised in this class, without it involving any limitation, the helpers in the trades enumerated in the definition of skilled laborers, the greasers, and the rubber-tire mounters (*gomeros*).

"E—By *unskilled laborer* is meant every laborer who performs labor, the execution of which does not require a previous period of training. There shall be comprised in this class, without it involving any limitation, the following: peons or ordinary laborers, collectors, washers, helpers for selling (oil, air, water, and gasoline), watchmen, messengers, and janitors."

to enjoy the same at the rate of 1 day for every 4 consecutive weeks in each one of which he has worked more than 4 days of not less than 6 working hours each; that said vacation shall be granted at the request of the employee in such manner as will not interrupt the operation of the business; and that the vacation periods may be accumulated during two years. As to the weekly day of rest provided by the decree, there is no controversy whatever in this case. (Cf. *Compañía Popular de Transporte* v. *Unión de Empleados de Transporte, et al.*, decided on May 4, 1948.* There is controversy, as we have already seen, regarding the vacation periods. We have not found a single case in which, by an express provision of law, vacation periods similar to those involved herein have been granted to employees or workmen of a private enterprise. See, however, *Compañía Popular de Transporte, Inc.* v. *Unión de Empleados de Transporte et al., supra,* and *People* v. *Ford Motor Company,* 63 N.Y.S. (2d) 697 (App. Div. S. Ct. N.Y. 1946). Nevertheless, the rest periods fixed, which as we have seen, amount to not more than 13 days for each year, fall within the spirit and purpose which moved the lawmaker to enact the Minimum Wage Act, and which, as we have already indicated, are, in brief, to promote the health and safety of the employees and workmen, and to protect them in their means of livelihood in such a manner as will not destroy the very sources of employment and work. The periods devoted to rest are necessary to prevent physical waste, exhaustion of energy, premature senility, and disease among the workmen. Although, apparently, by granting them the employer suffers a detriment, there is no doubt that in the long run, they turn out to be beneficial to him. The healthier and stronger the workmen of an industry are, the greater the output and efficiency of their labor become, and the fewer the absences and accidents occurring among them.

---

* REPORTER'S NOTE: This case was reconsidered and the opinion and judgment rendered therein were set aside as to other particulars on July 19, 1948.

Undoubtedly, vacations with pay for long periods injuriously affect the industry and business. However, the vacation periods involved herein are not unreasonable—13 days per year. On the other hand, this short period of annual vacation for its employees does not deprive the petitioner of its property without due process of law, since upon their return to work, with new enthusiasm and with new energy they will perhaps amply make up for all that which they failed to do or produce for their employer during such period. Insofar as the petitioner itself is concerned, the granting of rest periods to its employees and workmen is not a new thing. Those granted by Decree No. 12 are, by the way, on the average, less than those which the petitioner itself has been granting to its employees. According to Mr. Totti, petitioner's engineer, the vacation period granted by the petitioner to employees earning $11 weekly is one week; to those earning up to $18, two weeks; to those earning up to $26, three weeks; and to those earning $26 or more, four weeks. We reach the conclusion that the second error assigned is also nonexistent.

■■ Finally, the petitioner urges that in approving the said decree the Board overlooked the provisions of §§ 1(c), 1(d), and 12 of the Minimum Wage Act, which provide that the policy of the Act is to insure the progressive development of the industries which operate in Puerto Rico, by endeavouring to give them assurance of conditions favorable to their economic stability and providing that the Board, taking into consideration the economic condition of the industry, shall fix the minimum wages that it might pay without substantially curtailing employment; and that the wages fixed by said decree are arbitrary and void, since there was a failure to take into consideration the economic conditions through which the business of the petitioner is passing. This contention is not correct, either. The statement of facts and the opinion of the Board, as well as Mandatory Decree No. 12 itself,

plainly show that the Board took into consideration the precarious situation through which the petitioner is passing. The committee appointed to investigate the transportation industry in Puerto Rico held hearings and the Minimum Wage Board did likewise. As shown by the record sent up to this Court, the petitioner appeared at those hearings; numerous witnesses testified, and both the oral and documentary evidence introduced clearly and manifestly apprised the Board of the economic conditions of the respondent. There is no doubt that the Board took them into consideration when issuing the decree involved in this proceeding. In its Findings of Fact, the Board stated that in its judgment the minimum wages fixed would not notably affect the financial level of the enterprises as a whole; and in issuing its decree it deviated from the recommendations of the committee and fixed for the transportation industry by railroad, lower wages than those established for other transportation branches.

At the hearing held before the Board, the petitioner introduced abundant evidence in order to show that during the last years its economic situation has been difficult; but when minimum wages are fixed for an industry, the industry in general, not the economic condition of any particular company, is taken into consideration. *Escudero* v. *Minimum Wage Board,* 66 P.R.R. 561, 563; *Columbus & G.R.R. Co.* v. *Adm'r. of Wage and Hour Div.,* 127 F.(2d) 136, (CCA, 5th Circuit, 1942). The third and fourth errors assigned are also nonexistent.

For the reasons stated Mandatory Decree No. 12 should be affirmed and the petitioner adjudged to pay the sum of $300 as attorney's fees.

Mr. Justice De Jesús did not participate herein.