Van Voorhis, J.
This appeal involves the right of minority stockholders of The New York and Harlem Railroad Company (hereinafter described as “ Harlem ”) to allowances for counsel fees. They appeal from an order denying their motion for an award of such allowances, to be added at the foot of the decree in this declaratory judgment action, which has been decided in Harlem’s favor (185 Misc. 420, aifd. 272 App. Div. 870, affd. 297 N. Y. 820). The basis on which these allowances are asked is that Harlem is a subsidiary of The New York Central Railroad Company (hereinafter described as “ Central ”), with interlocking officers and directors, which is the adverse party in the action, and that they were, therefore, within their rights in appearing in the action in behalf of Harlem, as the equitable beneficiaries interested in the outcome of the action. Allowances can be made to attorneys for stockholders in derivative actions where their services have produced a benefit to the corporation. Special Term has held that the interest of these stockholders in the outcome of this action is not derivative.
Harlem leased its railroad to Central by contract dated April 1, 1873, as modified by supplemental contracts dated May 15, 1882, October 5,1898, and July 1,1943. Under these instruments Central agreed to assume certain obligations of Harlem, and to make what are described as “ semi-annual dividend rental *606 payments ” of $2.50 per share to the stockholders of Harlem. Federal income and excess profits taxes (both of which are hereinafter included in the term “ income taxes ”) were subsequently assessed against Harlem on the theory that the moneys thus paid by Central to Harlem’s stockholders were constructively received by Harlem, and represent income taxable to it. At first, it was held in the Federal courts that income taxes of a lessor corporation thus situated became liens on the reversion under such leases, but did not attach to the interest of the lessor’s stockholders pursuant to such arrangements (Western Union Tel. Co. v. Commissioner of Int. Rev., 68 F. 2d 16, certiorari denied 292 U. S. 636; Gold & Stock Tel. Co. v. Commissioner of Int. Rev., 83 F. 2d 465, certiorari denied 299 U. S. 564; see discussion of this Federal question in Johnson v. Western Union Tel. Co., 293 N. Y. 379, 383). Since then the Supreme Court of the United States has held in United States v. Joliet & Chicago R. R. Co. (315 U. S. 44) that the lien of unpaid income taxes against the lessor corporation (Harlem) attaches to the right of the stockholders to receive such payments from the lessee (Central). The Supreme Court said (p. 48): “ They obtain the dividend payments because of their status as shareholders. All questions of the rights of creditors aside, there can be no doubt that a corporation may normally distribute its assets among its stockholders. When it undertakes to do so, its act is nonetheless a corporate act though its shareholders receive new contractual rights enforceable by them alone against the transferee. That is to say, their rights to receive the proceeds on the disposal of corporate assets are strictly derivative in origin.”
That the rule of the earlier Federal cases was changed by the. Joliet case (supra) and that Harlem’s income taxes can be collected by proceeding against the nexus of rights which its stockholders received under these leasing arrangements, was recognized in United States v. Warren R. Co. (127 F. 2d 134); United States v. Morris & Essex R. Co. (135 F. 2d 711); Commissioner of Int. Rev. v. Western Union Tel. Co. (141 F. 2d 774) and Travelers Ins. Co. v. Commissioner of Int. Rev. (161 F. 2d 93, certiorari denied 332 U. S. 766). The opinions in several of these cases expressly state that the reason on account of which stockholders’ rights can be reached is that they are derivative in nature, having been acquired through the lessor (Harlem) corporation.
The action at bar placed in issue the question whether income taxes of Harlem were included among its obligations which *607 Central had agreed to pay under these lease contracts. Some of the larger minority stockholders were joined as defendants, and others intervened, and were represented separately hy counsel. Allowances for their counsel were denied by the order appealed from on the ground that they were interested as individuals only, and not as stockholders of Harlem, in having Central pay Harlem’s income taxes, so that such taxes would not be charged by the Federal Government against the semiannual dividend rental payments which they were entitled to receive under these contracts. Special Term held that these minority stockholders did not act on behalf of Harlem in resisting Central’s contention that it is not responsible for the payment of Harlem’s income taxes; in other words, the order appealed from is based on the theory that the interest of the stockholders under these leases is not derivative from Harlem, whereas the Federal Government imposes Harlem’s income tax liability against them on the theory that their interest is derivative. We do not concur in Special Term’s conclusion.
There is no occasion to question the right of minority stockholders, situated like these, to sue a lessee corporation in their individual right as third party beneficiaries (Bowers v. Interborough R. T. Co., 121 Misc. 250, affd. 208 App. Div. 768; see Johnson v. Western Union Tel. Co., 293 N. Y. 379, 383, supra; Commissioner of Int. Rev. v. Western Union Tel. Co., 141 F. 2d 774, 776, supra; Reaver v. Ransom, 224 N. Y. 233); the status which enables them to do so was conferred upon them, in effect, as a property dividend from Harlem to its stockholders when the lease arrangements to pay them $2.50 semiannually per share were entered into in 1873 and 1898. But if, as it turned out, the Federal Government, in the exercise of its power to tax, imposed a charge or lien upon the asset which was thus distributed to these shareholders, in order to defray a tax liability of Harlem, they became interested as stockholders in the enforcement of Central’s obligation to pay this liability of Harlem. Although no tax liability was in existence when the leases were made, the present fact is that unpaid income taxes of Harlem result in a lien on what is held by the stockholders, on the theory that they received property subject to the Government’s subsequently maturing right to pursue it as an asset transferred to them by Harlem. It is unnecessary to refine upon why the Government can do this, since its power to do so has been established by authoritative decisions in the Federal courts. The stockholders are subject to no unpaid tax liability of their own. In calling upon Central to pay, they have not asked it to meet their per *608 sonal obligations, but to meet a claim against Harlem, so as to prevent the Government from distraining an asset of Harlem’s in their hands. Unless Central paid for Harlem, the Harlem stockholders would be poorer by reason of a claim against the Harlem corporation. They were entitled to insist, in. the pending action, that Central assume this liability in the same shape in which it was forged in the Federal courts. In other words, their right to insist upon indemnification of Harlem by Central was derivative, just as the Government’s lien or charge against them would be derivative.
If Central were permitted to offset its payment of Harlem’s income taxes against the dividend rentals payable to Harlem’s stockholders, as prayed for in the complaint in this action for declaratory judgment, it would reduce pro tanto the value of the property interest which the stockholders received from Harlem when the leases were made.
There is no necessity, as has been stated above, to disturb the well-established New York rule that such stockholders, as individuals, can ordinarily sue a lessee corporation to recover such rental payments if not made. But where the lessee-obligor claims the right to make deductions, on the theory that the moneys to be withheld would be subject to Federal tax liens as property of the lessor corporation unless applied to defray such taxes, it does not lie in the mouths of lessor or lessee to assert that the lessor’s stockholders, as such, have no interest at stake in what happens.
The rational solution of the problem is that the individual right of stockholders to sue as third party beneficiaries, conferred upon them when the leases were made, was acquired in the guise of a distribution to them of property from Harlem, subject to inchoate liens for income taxes against Harlem if and when lawfully imposed by the Federal Government, and that the litigation over which of these two corporations should bear the eventual burden of paying these taxes involved the property of Harlem as a corporation, in which litigation its shareholders were interested as stockholders. Their stake in this suit was, therefore, derivative.
Former section 61-a (now covered, insofar as material, by §§ 64-67) of the General Corporation Law, as it has been construed by the courts, authorizes allowances for counsel fees of minority stockholders in derivative actions where such services have resulted in a benefit to the corporation. If a benefit has resulted, it is not essential that the services shall have produced *609 a fund, nor that the stockholders shall have been parties plaintiff rather than defendant (Bysheim v. Miranda, 45 N. Y. S. 2d 473, 475, and cases cited). If Central had failed to pay Harlem’s income taxes before bringing an action for declaratory judgment to determine its liability to do so, these stockholders would have been in the position of plaintiffs.
The statements in the dissenting opinion have been noted that “ The entire benefit of this suit inured to the minority stockholders and not to Harlem ”, and that “ The basis of the majority decision is apparently the fiction invented for tax purposes by the United States taxing authorities and finally upheld by the Federal courts.” The answer to that reasoning is that if only the interest of the minority stockholders as individuals were involved, and not that of Harlem as a corporation, Harlem could not have won this lawsuit, since Central did not agree to prote'ct the individual stockholders against tax liens, but only indemnified Harlem as a corporation. Regardless of whether these Federal tax liens are based upon a legal fiction, the State courts in this action have perforce adopted the same rationale when it came to construing Central’s contractual obligation to assume the payment. We should do the same when it comes to the subject of attorneys’ allowances.
An important question remains to be considered, on which this court is closely divided, whether the minority stockholders in this case should be denied attorneys’ allowances from Harlem, for the reason that Harlem was represented in the litigation by counsel of its own. No question has been raised concerning the disinterested manner, ability or success with which either of the firms of attorneys for Harlem performed their duties, either in this action or in the transactions which preceded it. Harlem succeeded in the suit, It required legal representation as a corporation, and the conduct of its counsel does not appear to us to be open to criticism. All of that is to be taken into account in evaluating the services of minority stockholders’ counsel, who cannot, in any event, be paid for work which was done by others. Nevertheless, where there is a conflict in interest between companies situated as are these two, the right of minority shareholders to participate in litigation on behalf of their company cannot depend upon any inquiry into the degree of conscientiousness or capacity of counsel for the subsidiary — counsel who have in reality, with however much good faith, been selected by an adverse party. Central owns a large majority of Harlem’s stock, and controls that corporation through such ownership by *610 means of interlocking directors and officers. In Farmers' L. & T. Co. v. New York & N. Ry. Co. (150 N. Y. 410), it was held that where a majority of the stock of a corporation is owned by another corporation, and the latter assumes the control of the business and affairs of the first corporation through its officers and directors, it assumes the same trust relation towards the minority stockholders that a corporation itself usually bears to its stockholders. To similar effect are the leading cases of Godley v. Crandall & Godley Co. (212 N. Y. 121); Kavanaugh v. Kavanaugh Knitting Co. (226 N. Y. 185) and McQuade v. Stoneham (263 N. Y. 323). Where an issue has to be litigated between the same person as an individual and as a trustee, fundamental principles of equitable jurisprudence ordinarily require that the cestuis que trustent shall have the right to be before the court. That expresses the essence of this situation, although it is an oversimplification, of course, of its ramifications. The application of the fiduciary principle to such cases should be used as a shield, and not as a sword by affording a means of plundering corporations. The trust, principle should not be invoked mechanically, nor applied in a dogmatic manner, without flexibility in adjustment to the equities of the particular case. It may well be, for example, that if the minority stockholders of Harlem had been called upon formally by its directors to select counsel of their choosing to represent it, and a procedure had been evolved to enable the counsel so selected to be paid under order of the Supreme Court in the exercise of its supervisory power over corporations, there would not have been occasion for the payment of additional counsel fees to attorneys otherwise employed for minority shareholders. It was not incumbent upon the counsel employed by Harlem to seek such consent, but perhaps the Harlem corporation could have done so if it had elected. We do not pass upon those questions now, inasmuch as the counsel who acted for Harlem in this litigation were not selected by the minority, and the latter were entitled to participate on behalf of the said corporation.
In determining these allowances, care must be taken to limit whatever allowances are granted to the reasonable value of services rendered which can be shown to have been of actual benefit to the corporation.
The judgment and orders appealed from should be reversed, with costs to appellants to abide the event, and the proceeding referred to an official referee to hear and report on whether services rendered by counsel for any of the minority stockholders have been of benefit to Harlem in the present lawsuit and, if so, *611 to hear and report upon the value of such services, and by whom rendered.